Saurí y Subirá, Peticionarios, *v.* Sepúlveda, Juez de Distrito, Demandado, y El Pueblo, Interventor.

Solicitud para que se expida un mandamiento de *certiorari* al Juez de la Corte de Distrito de Ponce en pleito sobre devolución de cóntribuciones pagadas bajo protesta.

No. 173.—Resuelto en mayo 12, 1917.

Devolución de Contribuciones—Contribuciones Pagadas Bajo Protesta—Emplazamiento—Citación al Gobernador—Derogación de Leyes.—Al aprobarse la Ley No. 35 de 1911, autorizando demandas contra el Tesorero de Puerto Rico para la devolución de contribuciones pagadas bajo protesta, el legislador fijó su pensamiento de un modo general en la materia descrita en el título y en las expresamente comprendidas en el cuerpo principal del proyecto de ley, más bien que en los detalles de procedimiento; y si el precepto relativo a la citación al Gobernador de Puerto Rico contenido en el apartado 5º. del artículo 93 del Código de Enjuiciamiento Civil quedó derogado de algún modo, lo fué por mera deducción.

Id.—Id.—Demandas Contra El Pueblo de Puerto Rico—Citaciones al Gobernador y al Attorney General.—La Ley No. 76 de 1916, autorizando demandas contra El Pueblo de Puerto Rico, comprende claramente una acción para la devolución de contribuciones pagadas bajo protesta, y su artículo 13 deroga tácitamente cualquier excusa tácita que pueda estar permitida por la Ley No. 35 de 1911, respecto a la citación al Gobernador, pues siendo la acción contra el Tesorero, una acción contra El Pueblo de Puerto Rico, el dejarse en vigor esa derogación tácita del apartado 5º. del artículo 93 del Código de Enjuiciamiento Civil, envolverá una contradicción de los términos claros e inequívocos de la última expresión de la voluntad legislativa disponiendo que la citación se hará al Gobernador y al Attorney General, el cual requisito está en completa armonía con èl procedimiento originalmente prescrito por el código.

Id.—Id.—Consentimiento de El Pueblo a Ser Demandado.—La Ley No. 35 de 1911, es un consentimiento formal por parte de El Pueblo de Puerto Rico a ser demandado para el cobro de contribuciones pagadas bajo protesta, y a no ser por la específica ratificación de tal consentimiento expresado en la sección 10 de la Ley No. 76 de 1916, toda la ley anterior hubiera quedado derogada por la sección 2 de la posterior. Así la ley de 1911 únicamente continúa en vigor sujeta a las restricciones y limitaciones de la de 1916.

Id.—Id.—Acciones o Procedimientos Contra el Pueblo—Demanda Contra Funcionarios en su Capacidad Representativa.—En la Ley de 1916 no existe inferencia alguna de la intención por parte del legislador a eximir del requisito referente a la notificación del emplazamiento en cualquier acción

o procedimiento contra El Pueblo de Puerto Rico, aquellas mismas acciones o procedimientos, cuando por su forma son contra cualquier funcionario en su capacidad representativa, y no debe intercalarse en el artículo 13 de dicha ley ninguna excepción que jamás tuvo en mente el legislador. *Ubi lex non distinguit nec nos distinguere debemus.*

ID.—ID.—DEMANDAS CONTRA EL PUEBLO DE PUERTO RICO—CITACIONES AL GOBER- NADOR, AL ATTORNEY GENERAL Y AL TESORERO.—La Ley No. 35 de 1911 y la No. 76 de 1916, pueden subsistir conjuntamente en cuanto se trata de la notificación del emplazamiento en acciones para el cobro de contribuciones pagadas bajo protesta, y deberán ser interpretadas, la una en relación con la otra, en el sentido de exigir que se hagan tres notificaciones del emplaza- miento: al Gobernador, al Attorney General y al Tesorero.

Los hechos están expresados en la opinión.

Abogado de los peticionarios: *Sr. A. F. Castro.*

El Juez demandado Hon. Domingo Sepúlveda, no com- pareció.

Abogado del interventor: *Sr. Jaime Sifre, Jr., Fiscal Es- pecial General.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

La presente es una acción establecida por un contribu- yente contra el Tesorero de Puerto Rico de conformidad con las disposiciones de la ley titulada "Ley disponiendo el pago de contribuciones bajo protesta, estableciendo un procedi- miento para exigir la devolución de las mismas, y para otros fines," aprobada en 9 de marzo de 1911.

El demandado presentó una moción a la corte solicitando que fuera anulado y declarado sin ningún valor el emplaza- miento, por las razones que siguen:

"Que aunque en la demanda se dice que se establece esta acción por Saurí y Subirá, el demandante, versus Charles F. Hill, Tesorero Auxiliar en funciones, con carácter interino, de Tesorero de Puerto Rico, en realidad de verdad la acción que se ejercita es contra El Pueblo de Puerto Rico (*Union Central Life Ins. Co.* v. *Gromer,* 20 D. P. R. 86).

"Que según aparece del diligenciamiento del emplazamiento en esta acción hecho por el marshal del distrito de San Juan, la noti- ficación del mismo se hizo en la persona de Charles F. Hill, Tesorero

Auxiliar en funciones con carácter de interino, de Tesorero de Puerto Rico.

"Que de acuerdo con la sección 13 de la Ley No. 76, aprobada en 13 de abril de 1916 para autorizar demandas contra El Pueblo de Puerto Rico, 'los procedimientos y toda alegación, notificación y documento relacionado con cualquier acción o actuación, contra El Pueblo de Puerto Rico, serán notificados al Gobernador y al Attorney General en la forma provista por la ley,' y de acuerdo con el emplazamiento en este caso ninguno de estos requisitos ha sido cumplido."

La resolución dictada por la corte de distrito declarando con lugar dicha moción ha sido sometida a nuestra consideración por virtud de esta solicitud de *certiorari.*

"Las acciones entabladas contra funcionarios de un Estado por representar al Estado en sus actos y responsabilidad y en las cuales aunque el Estado no es parte en los autos, es, sin embargo, la verdadera parte contra quien se solicita el remedio, y en las que si bien una sentencia a favor del demandante es nominalmente contra el demandado en su carácter individual, puede producir el efecto de regular la acción del Estado o de someterlo a responsabilidad, son acciones contra el Estado. 36 Cyc. 915.

"En una acción seguida contra el Estado, o en la cual es parte un Estado, las diligencias deben notificarse al Gobernador y al Attorney General del Estado; y a falta de disposiciones estatutorias especiales sobre la materia, parece ser suficiente con que la notificación se haga a cualquiera de estos funcionarios,"

aunque se ha dicho con alguna liberalidad que:

"Cuando el Estado no es parte en los autos, las diligencias deben notificarse al funcionario que se defiende a nombre del Estado." 36 Cyc. 920.

Podemos, de paso, hacer referencia, sin comentarios al caso de *Poydras de la Lande* v. *El Tesorero de Louisiana* (Corte Suprema, año 1854), 17 How. 1, que es el único que ha sido citado para sostener la proposición mencionada en último término, por ser de gran ayuda para llegar a establecer la verdadera interpretación de su significación.

Pero no nos interesan los principios generales como no sea por la ventaja que de su débil luz podamos recibir al di-

fundirla sobre la verdadera cuestión envuelta en este caso que es única y exclusivamente de interpretación estatutoria.

"El consentimiento del Estado para ser demandado es un acto completamente voluntario por su parte, pudiendo éste, por tanto, determinar los casos en que puede ser demandado, sus términos y condiciones, así como la forma en que ha de llevarse la acción; y solamente podrá ser demandado el Estado en los casos, forma, lugar y cortes que él determine, y quien quiera hacer uso de tal consentimiento debe solicitar el remedio tal como lo prescribe la ley y cumplir enteramente con los términos y condiciones como han sido establecidos, estando las cortes en el deber de ver que se han observado los métodos de procedimiento prescritos. Cuando un Estado consiente en ser demandado en sus propias cortes, únicamente puede quedar obligado hasta el punto de su sumisión a la jurisdicción, la que a veces sólo alcanza a resolver la reclamación del demandante sin disponer nada respecto a su cumplimiento mediante procedimientos judiciales, en cuyo caso no puede dictarse una sentencia eficaz contra el Estado, pudiendo obtenerse el remedio solamente por una apropiación de la legislatura para satisfacer la sentencia de la corte. Sin embargo, cuando el Estado mismo se somete sin reserva alguna en cuanto a la jurisdicción de la corte, puede hacerse uso de esa jurisdicción para dar completo efecto a todo lo que el Estado ha permitido que se haga debido a su acto de sumisión; y en cualquier caso la corte está en el deber de examinar cuidadosamente los términos de la sumisión y dictar sentencia de conformidad con ellos. Pero por el hecho de consentir en ser demandado, el Estado meramente hace renuncia de su inmunidad. No admite por ello su responsabilidad para con el demandante o establece una causa de acción a su favor, o extiende su responsabilidad a ninguna causa que no haya sido reconocida previamente. Concede meramente un remedio para hacer cumplir una responsabilidad anterior y se somete a la jurisdicción de la corte, con sujeción al derecho que tiene a interponer cualquier defensa legal." 36 Cyc. 913.

Dispone el artículo 89 del Código de Enjuiciamiento Civil, entre otros particulares, que la citación irá dirigida al demandado y deberá contener los nombres y apellidos de las partes en la acción, el objeto de ésta en términos generales, y la prevención de que el demandado debe comparecer y contestar la demanda, además del aviso de que si no com-

pareciere, el demandante solicitará de la corte le sea concedida la petición que hubiese hecho en la demanda.

El artículo 90 prescribe lo siguiente:

"Si se devolviere la citación sin haber sido ,hecha a todos o a cualquiera de los demandados, el secretario, a petición del demandante, expedirá una segunda citación en la misma forma que la primera."

Determina el artículo 93 que si el pleito fuese contra el Gobierno de Puerto Rico, la citación se hará al Gobernador de Puerto Rico, entregándole una copia de la misma.

El hecho de que desde el año 1911 al 1916 fuera o no suficiente con que se notificaran las diligencias solamente al Tesorero de Puerto Rico en una acción como ésta, no es una cuestión vital según el criterio que tenemos del caso.

Y puede admitirse para los fines de esta opinión, si bien en este caso hay también bastante lugar para discusión, que la ley de 1911 comparada con la de 1916 es una "ley especial" dentro del significado de la regla *generalia specialibus non derogat*.

"Es una regla bien establecida que las prescripciones generales y específicas que están al parecer en conflicto, ya en el mismo o en diferentes estatutos, y sin tenerse en cuenta la prioridad en su aprobación pueden subsistir conjuntamente, determinando y supliendo la específica las excepciones de la general." Artículo Preliminar sobre Estatutos e Interpretación Estatutoria. 1 Estatutos Federales Anotados. (edición 2ª.), página 165, párrafo 142.

En uno de los principales casos, el de *Rodgers* v. *The United States*, 185 U. S. 83, la Corte Suprema por conducto del Juez Sr. Brewer, se expresó en estos términos: (Bastardilla nuestra.)

"Es un principio de interpretación de estatutos, que un estatuto de fecha posterior que por sus términos es general y que no deroga expresamente a un estatuto especial anterior, por lo general no afectará a los preceptos especiales de dicho estatuto anterior. En otras palabras, cuando existen dos estatutos, el anterior especial y el posterior general, siendo los términos del general bastante amplios para

que en ellos esté comprendida la materia prescrita en el especial,
el hecho de que uno sea especial y el otro general establece la presun-
ción de que el especial ha de considerarse como excepción al general,
y no se considerará que el general deroga al especial, a menos que
se mencione expresamente la derogación, *o que las disposiciones del
general sean claramente incompatibles con las del especial.* En el
caso de *Ex parte Crow Dog,* 109 U. S. 556, 570, este tribunal dijo lo
siguiente:

"'*El texto de la excepción es especial y expreso: las palabras
que se alega que constituyen la derogación son generales e inconclu-
yentes.* La regla es *generalia specialibus non derogat.* "El prin-
cipio general que ha de aplicarse" ha dicho Bovil, C. J., en *Thorpe
v. Adams,* (L. R. 6 C. P. 135), "a la interpretación de leyes del
Parlamento, es el de que una ley general no ha de ser interpretada
en el sentido de que deroga a una ley anterior especial, a menos que
se haga alguna referencia expresa a la anterior legislación sobre la
materia, *o que exista necesaria incompatibilidad en que las dos leyes
prevalezcan conjuntamente.*" "Y la razón es" dijo Wood V. C.,
en el caso de *Fitzgerald v. Champenys,* (30 L. J. N. S. eq. 782; 2
Johns & Hem. 31, 54), "que habiendo tenido fija su atención la legis-
latura en una materia especial, *y observado todas las circunstancias
del caso y prescrito lo relativo a las mismas,* no es su intención dero-
gar luego por medio de una ley general por su propio acto, al no
hacerse especial mención de que tal sea su intención."'

"En la obra de Black sobre Interpretación de Leyes, se trata la
cuestión en la siguiente forma:

"'Como corolario a la doctrina de que las derogaciones tácitas
no son favorecidas ha venido a ser una regla establecida en la inter-
pretación de estatutos, que una ley subsiguiente en que se trata una
materia en términos generales y que no contradice expresamente los
preceptos de un estatuto anterior especial no habrá de considerarse
en el sentido de que su objeto fué afectar a las *disposiciones más
particulares y especiales de la ley anterior,* a no ser que sea absolu-
tamente necesario interpretarla en tal sentido para dar a sus palabras
alguna significación..'

"De igual modo en la obra de Sedgwick sobre Interpretación de
Ley Estatutoria y Constitucional, dice el autor en la página 98, y
refiriéndose a esta regla, lo siguiente:

"'La razón y filosofía de la regla es que *cuando la mente del legis-
lador se ha fijado en los pormenores de una materia y actuado por
virtud de la misma,* un estatuto subsiguiente en términos generales,

o en el que se trata la cuestión en una forma general y que de modo expreso no contradice la ley original, no habrá de ser considerado en el sentido de que su objeto fué afectar a las prescripciones anteriores más particulares o terminantes, a menos que sea absolutamente necesario dar a la última ley tal interpretación para que sus palabras puedan tener alguna significación.'

"Y en el caso de *Crane* v. *Reader,* 22 Mich. 322, 334, el Juez Sr. Christiancy, hablando a nombre de la Corte Suprema del Estado dijo lo siguiente:

" 'Cuando existen dos leyes o preceptos, uno de los cuales es especial y particular y que *comprende ciertamente la materia en cuestión,* y el otro general, que de existir por sí solo comprendería la misma materia, estando así en conflicto con la ley o precepto especial, deberá considerarse que la especial tiene por objeto constituir una excepción a las leyes o preceptos generales, particularmente cuando dichas leyes o preceptos generales y especiales son contemporáneos, pues no ha de presumirse que la legislatura quiso que hubiera conflicto.' "

Por otra parte, "aunque dos leyes no estén en contradicción en todos sus particulares, si la última comprende la materia de que se trata en la anterior y contiene además nuevos preceptos que demuestran claramente que fué una ley en sustitución de la primera, producirá el efecto de una derogación. Y cuando el estatuto que se examina comprende toda la materia de que tratan los anteriores estatutos, dicho estatuto deroga tácitamente a los anteriores, a no ser que aparezca algo en la naturaleza de la materia en cuestión del estatuto que se revisa, que manifieste una intención contraria * * *. Cuando un estatuto enmendatorio que pretende enmendar un estatuto que ya ha sido enmendado comprende toda la materia de que se trata en la enmienda anterior, el último queda derogado tácitamente."    Artículo preliminar, *supra,* página 167, párrafo 144.

De igual modo:

"Cuando la legislatura ha establecido claramente una regla para una clase de casos, no habrá de suponerse fácilmente que al elegir las palabras y frases, o al poner en vigor varios preceptos de la misma ley ha prescrito una regla distinta para otra clase de casos comprendidos en la misma razón que existió para los primeros; deberá adop-

tarse una interpretación que evite tan absurda diferencia cuando la significación del estatuto como lo demuestra su texto sea discutible. Este es simplemente el principio general de que debe darse a todos los estatutos una interpretación razonable, expresado en forma más correcta, y se aplica con gran resultado en muchísimos casos. Las cortes deben hacer todo lo posible por evitar que se impute a la legislatura el propósito de establecer distinciones entre casos fundados 'en un sistema de razonar que es demasiado insustancial y sutil para regular los actos humanos.' '' Artículo Preliminar, *supra,* página 103, párrafo 76.

Además:

''Cuando se deroga un estatuto y revalidan sustancialmente sus disposiciones en el estatuto derogatorio, se sostiéne que el último ocupa el lugar del viejo y que deja en vigor con modificaciones las prescripciones de la antigua ley en vez de anularlas o derogarlas, revalidándolas como ley nueva y original. En un importante caso federal sobre esta materia se estableció una acción para recobrar derechos de pilotaje concedidos por el estatuto que fué derogado y revalidado sustancialmente mientras estaba pendiente la acción, habiéndose resuelto que el nuevo estatuto no coartaba el derecho a seguir adelante con la acción hasta su término.'' Artículo Preliminar, *supra,* párrafo 148.

''Hablando en términos generales, cuando se enmienda un estatuto ' de modo que lea como sigue,' o se le revalida con cambios, o deroga en sus términos y revalida al propio tiempo con cambios, la ley enmendatoria o que revalida viene a sustituir a la original, la que entonces deja de tener la fuerza y vigor de una ley independiente; pero esto no quiere decir que la original quede anulada para todos los fines, o que todo lo que contiene la posterior ha de considerarse como si hubiera sido prescrito primeramente en ella. Por el contrario la regla mejor y predominante es que todo aquello de la original que se repite en la posterior sin cambio sustancial en otras partes, así como también cualquier materia que sea enteramente nueva, es eficaz como nueva legislación.'' *Great Northern Ry. Co.* v. *United States,* 155 Fed. Rep. 945.

Al aprobar la ley de 1911 el legislador fijó su pensamiento de un modo general en la materia descrita en el título y en las expresamente comprendidas en el cuerpo principal del proyecto de ley más bien que en los detalles de procedimiento,

acerca de los cuales no se dice una palabra. Si el precepto relativo a la notificación al Gobernador contenido en el artículo 93 del Código de Enjuiciamiento Civil quedó derogado de algún modo, lo fué por mera deducción de la autorización de una acción en forma en contra del Tesorero.

La ley de 1916 se titula "Ley para autorizar demandas contra El Pueblo de Puerto Rico."

Las cortes de distrito están autorizadas para conocer de tales acciones, en los casos siguientes:

"(*a*) Acciones por daños y perjuicios basadas sobre contratos celebrados después que esta ley entre en vigor.

"(*b*) Acciones para reivindicar propiedad inmueble o mueble o derechos sobre la misma, siempre que la causa de acción origine después de la aprobación de esta ley; *Disponiéndose*, que no se recobrarán daños y perjuicios ocasionados por El Pueblo de Puerto Rico con anterioridad a la época en que se entable la acción."

Los artículos 2 y 10 prescriben lo siguiente:

"Artículo 2.—No podrá entablarse ninguna acción contra El Pueblo de Puerto Rico a menos que el consentimiento para ello esté expresamente incluído en las disposiciones de esta ley, y todo consentimiento, expreso o tácito, dado por El Pueblo de Puerto Rico y no incluído expresamente en esta ley, queda por la misma revocada.

"Artículo 10.—No habrá en caso alguno ningún otro recurso para el cobro de reclamaciones contra El Pueblo de Puerto Rico que el establecido por esta ley, y aquellos que están en la actualidad expresamente autorizados por el Código Civil o por leyes de la Asamblea Legislativa; *Disponiéndose, sin embargo,* que todas dichas acciones serán entabladas solamente en las Cortes de Distrito Insulares."

La sección 13 se transcribe al pie de la letra en la moción para anular el emplazamiento, *supra*. Según su faz comprende claramente una acción de esta clase y es categóricament suficiente para derogar tácitamente cualquier excusa tácita que pueda estar permitida por la ley de 1911, relativa a que las diligencias deben ser notificadas al Gobernador, pues si la acción contra el Tesorero como lo autoriza la ley que acabamos de citar es una "acción o procedimiento con-

tra El Pueblo de Puerto Rico,'' como fuera de toda duda lo
es, y como ha resuelto este tribunal en el caso *The Union
Central Life Insurance Company* v. *Gromer,* 20 D. P. R. 86,
entonces al dejarse en vigor esa derogación tácita del párrafo
5°. del artículo 93 del código se contradirían hasta ese punto
los términos claros e inequívocos de la última expresión ili-
mitada de la voluntad legislativa en cuanto al particular.

Lo que se propone la ley de 1916, como claramente apa-
rece demostrado en el artículo 13, interpretado en relación
con el alcance general y propósito de la ley, tal como lo in-
dica su título y contexto al disponer que en todos los casos
en que el Gobierno es el verdadero demandado cualquiera
que sea la forma del procedimiento se hará la notificación
al Gobernador y al Attorney General anticipándose así, si
no eliminando el formalismo de endosos rutinarios y comu-
nicaciones oficiales por los debidos conductos administrati-
vos, es procurar que se dé pronta atención a la cuestión de
la defensa por los verdaderos representantes del Gobierno
y dejar expedito el curso del procedimiento. Esa política
está en completa armonía con el procedimiento originalmente
prescrito por el código y se basa en un sano sentido común.
No sólo no ocasiona grave injusticia, ni siquiera gran incon-
veniente al demandante, sino que redunda en su beneficio, en
tanto tiende a poner al Gobierno en condiciones de poder
comparecer y contestar o de otro modo hacer sus alegacio-
nes dentro del término prescrito por el estatuto, o al menos
sin demora innecesaria.

La alegación de que si bien el actual procedimiento de
hecho y en sustancia es una acción contra El Pueblo de Puerto
Rico, es en su forma contra el Tesorero de Puerto Rico, me-
ramente establece una diferencia superficial aunque sin de-
terminar ninguna distinción fundamental. No se alega, ni
puede alegarse, que con anterioridad al año de 1911 una ac-
ción como ésta, o cualquier acción cuyo resultado de ser fa-
vorable traspasaría dineros del Tesorero Insular a manos de

un demandante, pudo haberse entablado contra el Tesorero
de Puerto Rico por la teoría de que siendo dicha acción con-
tra el Tesorero no es una acción contra El Pueblo de Puerto
Rico. La ley de 1911 es el consentimiento formal por parte
del Pueblo de Puerto Rico a ser demandado para el cobro
de contribuciones que han sido satisfechas bajo protesta. Me-
nos en lo que respecta al consentimiento específico y ratifi-
cación de dicho consentimiento expresado en el artículo 10
de la ley de 1916, indiscutiblemente que toda la ley de 1911
hubiera quedado derogada por las disposiciones terminantes
del artículo 2 de la ley posterior. A la verdad que parece
mucho más exacto aunque algo paradójico, decir que el único
efecto lógico de los dos artículos interpretados conjuntamente
en el orden que tienen en el texto es producir una derogación
simultánea y revalidación o continuación de la ley de 1911,
sujeta, sin embargo, a las restricciones, limitaciones y modi-
ficaciones indicadas en el contexto.

Ciertamente que no puede alegarse que la legislatura en
el año 1916 no tuvo en cuenta la ley de 1911, y decir que no
fué su objeto incluir las acciones autorizadas en forma con-
tra el Tesorero, o cualquier otro funcionario del Gobierno
en su capacidad representativa, en las disposiciones del ar-
tículo 13, sería simplemente adicionar a dicho artículo me-
diante legislación judicial una disposición que la legislatura
en su sabiduría no creyó conveniente agregar.

No hay una línea, una palabra, ni una síliba ya en el ar-
tículo 13, o en alguna parte de la ley de 1916, en que pueda
basarse la más remota inferencia de alguna intención por
parte del legislador de eximir del requisito referente a la
notificación del emplazamiento en ''cualquier acción o pro-
cedimiento contra El Pueblo de Puerto Rico,'' aquellas mis-
mas acciones o procedimientos, cuando por su forma son con-
tra cualquier funcionario en su capacidad representativa, y
no debemos aplicar así indebidamente ninguna regla cono-
cida de interpretación a fin de intercalar en ese artículo una

excepción que jamás estuvo en la mente de sus autores. *Ubi lex non distinguit nec nos distinguere debemus.* Aunque en estas circunstancias esta máxima parece demasiado suave, sin embargo, es una contestación suficiente al argumento presentado por el apelante en este caso.

Debemos hacer presente que la semejanza de criterio respecto a mucho de lo que se ha dicho acerca de este aspecto del caso, lo debemos a un excelente artículo publicado en el número de abril de la revista *Notas Legales,* bajo el título de ''Revisión de Apelación por la Corte Suprema de los Estados Unidos limitada a tres meses,'' por Charles C. Moore, autor del artículo preliminar a los Estatutos Federales Anotados, de donde hemos citado con tanta liberalidad.

Pero apenas si puede decirse que la cuestión de la derogación tácita está necesariamente envuelta en este caso, y quizás si se ha llamado la atención a ella más de lo que pueda estar justificado por las verdaderas circunstancias. La ley de 1916 no afecta en absoluto a la forma de la acción que autoriza la de 1911, sin que dicha ley de 1916 niegue en su letra o espíritu la idea de una acción en forma contra el Tesorero, o que se haga a él la notificación incidental del emplazamiento si tal notificación es consecuencia necesaria y surge de la forma de la acción. Sus disposiciones en lo relativo a la notificación son afirmativas y no negativas, acumulativas y complementarias y no derogatorias. Ambos estatutos pueden existir conjuntamente en perfecta armonía en tanto se trata de esta cuestión del emplazamiento, y cada uno debe ser interpretado en relación con el otro a fin de exigir que se hagan tres notificaciones del emplazamiento, o sea, al Gobernador, al Attorney General y al Tesorero de Puerto Rico, en vez de ser notificado solamente el Tesorero, o el Gobernador y el Tesorero, como haya sido el caso con anterioridad a la ley de fecha más reciente.

La orden de la corte de distrito anulando el emplazamiento notificado al Tesorero y ordenando la presentación de una

demanda enmendada debe ser anulada y la resolución que sirvió de fundamento a dicha orden en tanto por ella se resuelve que es necesaria la notificación al Gobernador y al Attorney General debe ser confirmada.

> *Con lugar la solicitud y anulada la orden en cuanto por ella se declara nulo el emplazamiento al Tesorero y ratificada en cuanto por ella se decide que debe emplazarse también al Gobernador y al Attorney General, para lo cual se concedieron veinte días.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.