RAMÓN MORÁN & Co., peticionaria *v.* CORTE DE DISTRITO DE SAN JUAN, HON. C. LLAUGER DÍAZ, JUEZ, demandada.

Núm. 1186.—*Sometido:* Julio 10, 1939. *Resuelto:* Noviembre 22, 1939.

*C. Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la peticionaria; *Hon. Procurador General B. Fernández García* y *M. Rodríguez Ramos, Procurador General Auxiliar,* abogados del interventor, demandante en el pleito principal.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El presente es un recurso de *certiorari* instado por la sociedad mercantil, agrícola e industrial de Manatí, P. R., Ramón Morán y Compañía contra la Corte de Distrito de San Juan, a los efectos de que esta Corte Suprema reclame los autos del pleito número 30,895 ante dicha corte de distrito establecido por "El Pueblo de Puerto Rico, y en su representación *don Rafael Sancho Bonet, Tesorero de Puerto Rico,* demandante, v. *Ramón Morán & Cía.,* demandada, sobre cobro de contribución sobre ingresos," y con vista de los mismos revise y anule la resolución de 23 de mayo de 1939 dictada en el mismo declarando no haber lugar a la eliminación de la demanda enmendada radicada en abril 14, 1939.

El auto fué expedido, y las partes interesadas oídas en julio diez último.

La cuestión envuelta es interesante y ha sido bien presentada por la peticionaria y ampliamente discutida por las partes.

La sociedad Ramón Morán y Compañía rindió en 1935 al Tesorero de Puerto Rico una declaración de ingresos correspondientes al año contributivo 1931–32, haciendo figurar en ella una pérdida de $59,080.04. Meses después el Tesorero le notificó una contribución por deficiencia de $25,459.56 incluyendo intereses y penalidades.

Celebrada una vista administrativa ante el propio Tesorero y confirmada la contribución, apeló la sociedad para ante la Junta de Revisión e Igualamiento y este organismo revocó la actuación del Tesorero en diciembre 28, 1937. En diciembre 23 del siguiente año se inició el pleito de que se trata en la forma que dejamos indicada, esto es, El Pueblo de Puerto Rico representado por su Tesorero.

Emplazada la demandada, excepcionó la demanda por falta de hechos determinantes de causa de acción y porque el Tesorero no tenía capacidad para representar al Pueblo que debió comparecer por conducto del Gobernador.

En marzo 8, 1939, la corte de distrito declaró con lugar ambas excepciones, concediendo un término de diez días para radicar demanda enmendada.

En efecto en abril 14, 1939, dicha "demanda enmendada" fué radicada bajo el siguiente título: "El Pueblo de Puerto Rico, y en su representación el *Sr. Blanton Winship, Gobernador de Puerto Rico,* demandante, v. *Ramón Morán & Co.,* demandada. Sobre cobro de contribuciones sobre ingresos."

En abril 24, 1939, la compañía demandada presentó una moción eliminatoria que, en lo pertinente, dice:

"Que, como surge de la resolución de esta Hon. Corte de fecha 8 de marzo de 1938 y que aparece en estos autos, la excepción interpuesta a la demanda original fué declarada con lugar por 'falta de capacidad del demandante Rafael Sancho Bonet, en representación de El Pueblo de Puerto Rico, ya que no ha sido autorizado por la Ley Orgánica ni por ninguna otra ley, para representar a El Pueblo

de Puerto Rico en este litigio,' y así como porque dicha demanda no contenía alegaciones constitutivas de una causa de acción.

"Que esta Hon. Corte concedió permiso al demandante Rafael Sancho Bonet . . . . para radicar una demanda enmendada, si ello fuere posible, y así conviniere a sus derechos.

"*     *     *     *     *     *     *     *

"Que . . . con fecha 14 de abril de 1939 se radicó una demanda enmendada y en ella comparece ahora como demandante el Sr. Blanton Winship, Gobernador de Puerto Rico, en su carácter de representante de El Pueblo de Puerto Rico.

"Que esta última demanda se radicó sin que dicho Sr. Blanton Winship solicitara permiso para comparecer en estos autos en el carácter que él alega ostentar y dar así oportunidad al demandado para formular sus objeciones a la sustitución o cambio completo de parte demandante que se ha llevado a efecto mediante la presentación de la aludida demanda enmendada.

"Que la acción iniciada por Rafael Sancho Bonet era una nula, por carecer él de capacidad para demandar como representante de El Pueblo de Puerto Rico, y no existiendo un demandante verdadero como iniciador original del litigio, no procede la admisión de una demanda enmendada en la que ha habido un cambio absoluto de parte demandante.

"Que en el presente caso procede la eliminación de la demanda enmendada presentada por haber sido una nulidad la acción originalmente iniciada, no pudiendo prevalecer la sustitución de partes que se pretende."

Y la corte, en mayo 23, 1939, resolvió:

"Se declara sin lugar la moción de la parte demandada, . . . .

"El alegato que radica la demandada en apoyo de su moción es sumamente interesante; pero en vista de las circunstancias especiales de este caso y que el demandante siempre es El Pueblo de Puerto Rico, que es la verdadera parte interesada, me parece que se sirven mejor los fines de la justicia si se declara sin lugar la moción de eliminación, como así se declara, y se concede a la demandada un término de diez días para radicar alegaciones contra la demanda enmendada."

¿Tuvo jurisdicción la corte de distrito para continuar actuando en el pleito o éste quedó definitivamente terminado desde marzo ocho, 1939, sin que le fuera posible

revivirlo al Pueblo de Puerto Rico por medio de su verdadero representante?

Como hemos visto se trata de una acción civil iniciada ante una corte de justicia a los efectos del cobro de una contribución sobre ingresos de acuerdo con lo preceptuado en la sección 57(b) de la Ley Núm. 74 para proveer rentas para El Pueblo de Puerto Rico mediante la imposición de ciertas contribuciones sobre ingresos (*income tax*) y para otros fines, aprobada en 6 de agosto de 1925, pág. 515, que dice:

"(b) Si la Junta determinare que existe una deficiencia, la cantidad así determinada se impondrá y será pagada mediante notificación y requerimiento del Tesorero. No se impondrá parte alguna de la cantidad determinada por el Tesorero y desestimada por la junta como deficiencia, pero se podrá entablar una acción en una corte de distrito de jurisdicción competente, sin tasación, para el cobro de cualquier parte de la cantidad así desestimada. La corte incluirá en su fallo los intereses correspondientes al montante del mismo, a razón del 6 por ciento anual desde la fecha prescrita para el pago de la contribución hasta la fecha de la sentencia. Dicha acción se entablará dentro de un año después de la decisión final de la junta, y podrá comenzarse dentro de dicho año aún cuando el período señalado para la prescripción en la sección 60 haya expirado."

Nada prescribe la misma sección sobre el funcionario llamado a entablar la acción y si la ley en sus demás secciones guardara silencio sobre el particular, gran fuerza tendría el razonamiento contenido en el alegato de oposición al *certiorari* presentado por el Pueblo por medio del Procurador General en pro de que el funcionario lógico para actuar lo era el Tesorero Insular (véase *Puerto Rico Fertilizer Co.* v. *Domenech, Tesorero,* 50 D.P.R. 405, 411), pero la propia Ley Núm. 74 de 1925 al fijar la jurisdicción de las cortes, por su sección 82(b), pág. 547, ordena que:

"(b) A instancia de El Pueblo de Puerto Rico las cortes de distrito quedan por la presente investidas de jurisdicción para dictar y librar autos y órdenes de *injunction,* nombramientos de admi-

nistradores judiciales, y demás órdenes y diligencias, y para dictar los fallos y decretos que fueren necesarios o adecuados para poner en vigor las disposiciones de esta Ley. Los recursos provistos por la presente son adicionales y no excluyen los demás que El Pueblo de Puerto Rico ofrece en y fuera de dichas cortes para poner en vigor las referidas disposiciones.''

De suerte que es El Pueblo de Puerto Rico el autorizado para iniciar los procedimientos ante las cortes, incluso el establecido por la sección 57, letra *b* de la ley, y siendo ello así, su representación corresponde al Gobernador. Sección 12 del Acta Orgánica; Art. 48, núm. 5, del Código Político; *State* v. *Huston,* 97 P. 982, 986; *El Pueblo* v. *Torres,* 28 D.P.R. 835 y *Saurí & Subirá* v. *Sepúlveda,* 25 D.P.R. 242.

Y esa conclusión se impone además porque cuando en la propia ley se encomienda la gestión del cobro al Tesorero su prescripción es expresa, como sucede cuando la Junta determina que existe una deficiencia. Si se trata de procedimientos administrativos, el Tesorero actúa con plena autoridad hasta el fin. Si hay que acudir a las cortes, debe el Tesorero someter el caso al Gobernador para que éste sea el que actúe en representación del Pueblo por su abogado el Procurador General. Ésa es la norma que la propia parte demandante reconoció al formular su ''demanda enmendada'' por medio de su representante el Gobernador.

■■ Resuelto este punto, veamos si es posible considerar la demanda de abril 14, 1939, en la que El Pueblo compareció por su verdadero representante, como una enmienda a la demanda de diciembre 23, 1938, en la que compareció por un funcionario sin autoridad para ello.

La sociedad peticionaria invoca la reciente decisión de esta Corte en *González* v. *White Star Bus Line, Inc.,* 53 D.P.R. 345, 348, en la que se resolvió que ''no puede sustituirse el demandante que entabló la acción por un nuevo demandante, cuando la parte que viene como sustituta es la única que tenía un interés actual al tiempo que se entabló la acción.''

En dicho caso se inició el pleito por una mujer casada por daños que legalmente pertenecían a la sociedad de gananciales. La demanda fué declarada sin lugar por tal motivo. Pidió reconsideración la demandante solicitando que se le concediera permiso para archivar una demanda enmendada. Accedió la corte y la demandada apeló alegando que la demanda original era fatalmente defectuosa, no susceptible de enmienda, y porque la demanda enmendada no corregía el defecto ya que no teniendo derecho de acción la demandante, tampoco lo tenía para pedir que le sustituyera por otra parte ajena al litigio.

Expuestos esos hechos y citado el caso de *Dubbers* v. *Goux,* 51 Cal. 153, dijo esta corte:

"Siendo ello así, como la sociedad de gananciales que trató de traerse al pleito era la única que tenía un interés actual al tiempo en que se entabló la acción, claro es que la demanda enmendada no pudo admitirse. La corte carecía de autoridad para ordenar por tal medio que un pleito que cayó por su base, que era a los efectos legales inexistente, continuara en pie, como si se hubiera válidamente iniciado cuando la primitiva demanda fué archivada."

Y alega la sociedad peticionaria que:

"Parafraseando a este Hon. Tribunal, podemos decir que en el caso de autos la corte inferior careció de autoridad para ordenar que por medio de la demanda enmendada continuara en pie un pleito que cayó por su base, que era a los efectos legales inexistente, vista la nulidad de la comparecencia intentada por el Sr. Sancho Bonet a nombre de El Pueblo de Puerto Rico. Ciertamente no puede decirse que en el caso de autos El Pueblo de Puerto Rico haya válidamente iniciado el pleito, habida cuenta de que no ha comparecido legítimamente en ningún momento hasta la fecha de la radicación de la demanda enmendada."

Creemos que en verdad no puede eludirse la conclusión de que no es posible la enmienda por no existir correlación entre la demanda original y la enmendada aun cuando en ambas figure como demandante El Pueblo de Puerto Rico.

Si un funcionario, asumiendo una facultad que no tiene, entabla una acción ante las cortes de justicia a nombre del Pueblo, su actuación es ineficaz en derecho. Si luego la acción se establece por el Pueblo por medio de su legítimo representante, no puede considerarse el pleito así establecido como continuación del primero si que como algo que se inicia entonces y que desde entonces es que tiene existencia legal.

Lo dicho parecerá más claro si se toma en consideración la ley de prescripción. Por ejemplo en este caso concreto el término concedido por el estatuto para recurrir para ante los tribunales es el de un año. La primera demanda se radicó poco antes de vencerse dicho término y la segunda cuando había ya vencido. ¿Puede sostenerse que la segunda lo fué dentro del término cuando no fué hasta que se presentó que El Pueblo estuvo debidamente ante la corte? Una respuesta en la negativa se impone.

Parece propio decir que la jurisprudencia sentada en el caso de González, supra, que se ha invocado, lo fué siguiendo la establecida en el de *Flit* v. *White Star Line*, 49 D.P.R. 144, que a su vez siguió los de *Vázquez* v. *Valdés*, 28 D.P.R. 467, *Vázquez* v. *P. R. Railway Light & Power Co.*, 35 D.P.R. 62, *Irizarry* v. *Díaz*, 35 D.P.R. 144 y *Dávila* v. *P. R. Railway, Light & Power Co.*, 44 D.P.R. 950, y que posteriormente en el caso de *Vere* v. *Corte*, 54 D.P.R. 262, 265, se dijo:

"Reducida a sus últimos términos la cuestión envuelta es la siguiente. Demandada una persona contra la cual no existe causa de acción, ¿puede permitirse una enmienda a la demanda por virtud de la cual se traiga al pleito la persona contra la cual existe la causa de acción ejercitada, o es necesario iniciar contra ella otra acción independiente?

" *        *        *        *        *        *        *

". . . Aunque aquí se trata de partes demandadas y en los casos citados de partes demandantes el principio es igual. 'La concesión de permiso para enmendar una demanda que tiene por fin no el corregir un error de nombre en ella sino el de sustituir la única parte demandada por otra completamente distinta, es improcedente en derecho,' resolvió esta corte en el caso de *Melón Hnos. & Co., S. en C.* v. *R. Muñiz de León*, 47 D.P.R. 91."

En el caso de *People* v. *Navarro*, 22 Mich. 1, citado con aprobación en *State* v. *Homesteaders Life Ass'n.*, 90 F. (2d) 545, se dijo:

"Una corte sólo puede reconocer al Estado como parte en una acción legal, a través de agentes o representantes nombrados por ley para hablar y actuar en su nombre en la cuestión que se considera; y, a menos que en el caso dado el agente o representante correspondiente esté presente, ante la ley, el Estado no está presente."

"Las decisiones de la Corte Suprema de Missouri," se resolvió en *State of Missouri* v. *Homesteaders Life Ass'n.*, 90 F. (2d) 543, "son al efecto de que el Estado no es parte en una acción a menos que el funcionario autorizado por ley la instituya a su nombre."

Y en *State* v. *Gattavara*, 47 P. (2d) 18, se resolvió, copiando del resumen, lo siguiente:

"Cuando el Estado radica una acción a través de abogados del Departamento del Trabajo para recobrar primas y penalidades para el fondo de compensaciones siendo el Procurador General la única propia parte para iniciar dicha acción, y se trajo al récord una carta del Procurador General dirigida a uno de los abogados, fechada después de haberse radicado la acción, por la que se pretendía autorizar dicho pleito, los abogados que radicaron la acción no tenían autoridad para radicarla en ausencia de la firma del propio Procurador, o por poder, en el emplazamiento y la demanda, y la acción debió desestimarse."

Aunque en esas decisiones la cuestión de una enmienda no fué considerada, puede verse que todas son al efecto de que un pleito que no se entabla por el verdadero representante del Estado, no tiene existencia legal, y siendo ello así no cabe la enmienda.

*Por virtud de todo lo expuesto debe anularse la resolución de la Corte de Distrito de San Juan de 23 de mayo de 1939 y en su lugar decretarse la eliminación de la demanda enmendada.*

El Juez Asociado Señor Travieso no intervino.