El Pueblo de Puerto Rico, representado por Sergio Cuevas, Comisionado del Interior, peticionario, *v.* Ricardo La Costa, Jr., Juez, Corte de Distrito de San Juan, demandado.

Núm. 360.—*Sometido:* Julio 21, 1941. *Resuelto:* Julio 21, 1941.

Hon. *Procurador General Interino Emilio de Aldrey* y *Pablo Defen-dini, Subprocurador Auxiliar,* abogados del peticionario; *Brown, González & Newsom* y *E. Córdova Díaz,* abogados de la interventora, la Porto Rico Railway, Light & Power Co., demandada en el pleito principal.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El Pueblo de Puerto Rico, representado por el Comisionado del Interior, instó en la corte inferior un procedimiento de expropiación forzosa contra la corporación P. R. Railway, Light & Power Co. La demandada interpuso una moción para eliminar ciertos particulares de la demanda y al declararse ésta sin lugar, presentó un escrito de excepciones previas que también fueron denegadas, radicando entonces su contestación a la demanda. Interpuso el demandante una moción eliminatoria de ciertas alegaciones de la contestación y siendo declarada con lugar, radicó la demandada su contestación enmendada celebrándose posteriormente el juicio, quedando la resolución del caso pendiente de la radicación de alegatos. En este estado del pleito, el demandante, amparándose en la ley núm. 2, aprobada el primero de abril de 1941 radicó, como un incidente de dicho pleito, dos escritos que tituló "Declaración de adquisición" y "Moción sobre entrega material", respectivamente, que copiados a la letra dicen así:

"Declaración de adquisición.

"Comparece el Comisionado del Interior de Puerto Rico, Sergio Cuevas, y declara:

"1. Las propiedades, derechos y privilegios que se describen en el curso de esta declaración se adquieren bajo la autoridad de las disposiciones contenidas en el artículo 9 de la ley núm. 93, aprobada en mayo 6 de 1938; de la Ley de Expropiación Forzosa aprobada en marzo 12 de 1903, según fué posteriormente enmendada, especialmente por la ley núm. 44, aprobada en agosto 6 de 1935, y la ley núm. 2, aprobada en abril 1 de 1941; y de la ley núm. 94, de mayo 6 de 1938; y además bajo y a virtud de la autoridad de la Carta Orgánica de Puerto Rico y las disposiciones de la franquicia otorgada por la Comisión de Servicio Público de Puerto Rico a la Porto Rico Railway, Light & Power Co. y aprobada por el Gobernador de Puerto Rico con fecha 4 de enero de 1928.

"2. Las referidas propiedades se adquieren para que pasen a formar parte integrante del sistema hidroeléctrico que El Pueblo de Puerto Rico tiene establecido y explota bajo el nombre de Utilización de las Fuentes Fluviales, y se adquieren para dedicarlas a dicho fin inmediatamente.

"3. La descripción de las propiedades así expropiadas y a adquirir es la que aparece en los *exhibits* A y B que se unen a esta declaración y se hacen formar parte integrante de la misma, siendo las propiedades descritas en dichos exhibits las mismas que se han descrito en la demanda radicada en esta causa de expropiación forzosa bajo el mismo epígrafe de esta declaración.

"4. El interés que se adquiere en las referidas propiedades para los fines públicos mencionados es el de un título de dominio absoluto.

"5. Las propiedades expropiadas y adquiridas mediante este procedimiento aparecen en los planos que se acompañan a esta declaración y se hacen formar parte de la misma, marcados exhibit C.

"6. La suma estimada por el declarante como compensación justa y razonable por dichas propiedades, con todos sus derechos, privilegios y pertenencias, es la de novecientos treinta y seis mil ciento cincuenta y un dólares setenta y nueve centavos ($936,151.79), la cual suma el declarante ha depositado en la secretaría de esta Hon. Corte con anterioridad a esta fecha, o sea en la fecha en que se radicó la demanda de expropiación en este caso; y dicha suma está a disposición y para beneficio de la demandada, Porto Rico Railway, Light & Power Co., siendo la opinión del declarante que la suma que en última instancia haya de proveerse en este litigio como compensación por las referidas propiedades estará dentro de cualquier límite que en ley puede y debe pagarse como valor justo y razonable por dichas propiedades.

"En testimonio de lo cual, firmo la presente Declaración de adquisición, bajo el sello del Departamento del Interior, en San Juan, Puerto Rico, a los 27 días de mayo de 1941.

Sergio Cuevas,<br>
Comisionado del Interior."

"Moción sobre entrega material.

"A la Hon. Corte:

"Comparece El Pueblo de Puerto Rico, representado por su Comisionado del Interior, y por conducto del Procurador General de Puerto Rico y el Subprocurador Auxiliar que suscribe, respetuosamente expone y alega:

"1. En el día de hoy ha radicado en este caso una Declaración de adquisición autorizada por el Comisionado del Interior de Puerto Rico, Sergio Cuevas, de acuerdo con los preceptos de la ley núm. 2 aprobada el 1 de abril de 1941.

"2. El demandante ha depositado en la secretaría de esta Hon. Corte la suma que estima justa y razonable como compensación por las propiedades envueltas en este procedimiento, o sea novecientos treinta y seis mil ciento cincuenta y un dólares setenta y nueve centavos ($936,151.79), la cual suma está a disposición, para su beneficio, de la demandada Porto Rico Railway, Light & Power Company.

"3. El Pueblo de Puerto Rico tiene necesidad urgente de tener en su posesión, para dedicarlas inmediatamente a los fines que se expresan en su demanda y en la 'Declaración de adquisición' antes mencionada. las propiedades que son objeto de este procedimiento de expropiación.

"4. El demandante estima que la demandada puede razonablemente efectuar la entrega material de las referidas propiedades dentro de un término máximo de sesenta (60) días, a contar desde la fecha en que se le notifique la resolución que a tal efecto pueda recaer en este caso.

"En mérito de lo anteriormente expuesto, el demandante suplica que esta Hon. Corte fije un término no mayor de sesenta (60) días para la entrega material de las propiedades objeto de expropiación en este procedimiento, a contar dicho período desde la fecha de la notificación de la resolución de la corte.

"San Juan, Puerto Rico, a los 27 días de mayo de 1941.

George A. Malcolm,<br>
Procurador General.<br>
Pablo Defendini,<br>
Subprocurador Auxiliar."

Los dos escritos fueron sometidos a un juez distinto de los que habían conocido de las alegaciones anteriores y teniendo este último un criterio legal distinto del de sus compañeros, con fecha 29 de mayo de 1941 dictó una extensa resolución cuya parte dispositiva dice así:

"No estando autorizado el Comisionado del Interior, Sergio Cuevas, para representar al demandante Pueblo de Puerto Rico en esta acción ni para ejercitar la misma, se declara sin lugar la moción del demandante sobre entrega material de las propiedades de la demandada, por no haberse entablado este procedimiento por, a nombre y bajo la autoridad de El Pueblo de Puerto Rico."

Solicitó El Pueblo de Puerto Rico la reconsideración de la mencionada resolución dos veces y en ambas ocasiones le fué denegada.

En una extensa petición en que se exponen detalladamente los hechos antes expresados y en la que literalmente se transcriben las distintas resoluciones a que hemos hecho referencia, solicitó de este tribunal El Pueblo de Puerto Rico la expedición de un *mandamus* dirigido a la Corte de Distrito de San Juan, Hon. Ricardo La Costa, Jr., Juez, que ordene a dicho juez que "asuma jurisdicción en el caso seguido en la Corte de Distrito de San Juan por El Pueblo de Puerto Rico contra Porto Rico Railway, Light & Power Co., Civil núm. 32,557, sobre Expropiación Forzosa, y que, en su consecuencia, resuelva, decrete y ordene la entrega material de las propiedades envueltas en el caso mencionado, según provee la ley núm. 2, aprobada el 1 de abril de 1941; y suplica además que dicte cualquier otro pronunciamiento que estime pertinente en ley."

Se expidió el auto alternativo de mandamus de acuerdo con la súplica de la petición, señalándose el 9 del corriente a las dos de la tarde para oír al demandado en caso de que no estuviese dispuesto a cumplir lo que se le ordenaba.

El día anterior a la fecha señalada, compareció el juez demandado por medio de una moción en la que solicitó se anulase el auto alternativo, alegando:

(1) Que Sergio Cuevas, en su carácter de Comisionado del Interior, no tiene la representación de El Pueblo de Puerto Rico, la que corresponde al Gobernador conforme se resolvió en *Ramón Morán & Co.* v. *Corte*, 55 D.P.R. 637, y porque la petición no aduce hechos constitutivos de causa de acción.

(2) Porque el demandado no dejó de asumir jurisdicción tanto del caso en su fondo como de la moción sobre entrega material radicada en dicho caso.

(3) Porque el demandado en ningún momento rehusó asumir jurisdicción para considerar y resolver la moción de entrega material de las propiedades de P. R. Railway, Light & Power Co., ni resolvió que careciera de jurisdicción o autoridad para conocer del asunto, resultando por el contrario de las alegaciones de la petición de mandamus en este caso radicada que el demandado en el ejercicio de sus funciones judiciales y luego de considerar las constancias obrantes en los autos del aludido caso de expropiación forzosa, la moción de entrega material y los documentos que con la misma se acompañaron, y especialmente la declaración de adquisición firmada por Sergio A. Cuevas, en su carácter de Comisionado del Interior de Puerto Rico, resolvió declarar sin lugar la moción de referencia porque a su juicio no se había entablado el procedimiento de expropiación por, a nombre y bajo la autoridad de El Pueblo de Puerto Rico, y por no estar firmada la declaración de adquisición por la persona o entidad autorizada por la ley para la expropiación correspondiente, todo ello de acuerdo con las disposiciones de la sección 5A de la ley núm. 2, aprobada el primero de abril de 1941, invocada por el propio peticionario.

(4) Porque habiendo resuelto el demandado las cuestiones que le fueron planteadas, el recurso de mandamus es improcedente.

(5) Porque el demandado, en su carácter de Juez de la Corte de Distrito de San Juan, no tenía el deber ministerial

de resolver, decretar y ordenar la entrega material de las propiedades envueltas en el aludido caso de expropiación forzosa si a su juicio y en el desempeño de sus funciones judiciales, dicho procedimiento no había sido entablado por, a nombre y bajo la autoridad de El Pueblo de Puerto Rico, y si la declaración de adquisición que se acompañó a la citada moción era insuficiente o carecía de cualquiera de los requisitos fijados en la ley núm. 2 aprobada el primero de abril de 1941, no pudiendo imputarse abuso de discreción al aquí demandado al resolver dicha moción en la forma en que lo hizo.

(6) Porque entiende el demandado que la resolución por él dictada en el indicado incidente es correcta de acuerdo con la resolución de esta Corte Suprema en el caso de *Ramón Morán & Co.* v. *Corte,* supra, y.

(7) Porque aun en el supuesto de que dichas resoluciones sean erróneas, no pueden ser objeto de revisión mediante un recurso de mandamus.

A la referida moción acompañó el juez demandado un memorándum de autoridades en apoyo de sus proposiciones.

Compareció además como interventora en este incidente la P. R. Railway, Light & Power Co., demandada en el caso de expropiación forzosa, radicando una extensa moción argumentada oponiéndose a la petición de mandamus, alegando diversas cuestiones en contra de la misma, entre las cuales se halla la siguiente, que consideramos de suma importancia, a saber: que no procede el mandamus solicitado porque conforme aparece de la propia petición, la corte inferior no se negó a asumir jurisdicción y resolver el procedimiento sobre entrega material de la planta hidroeléctrica de Río Blanco, sino que por el contrario dicha corte admitió, consideró y resolvió en el ejercicio de sus poderes judiciales las peticiones que dieron origen a este procedimiento, y su resolución no se basó en falta de poder o jurisdicción para entender del mismo, sino en la ausencia de uno de los requisitos exigidos

por la ley para autorizar la entrega inmediata de dicha planta hidroeléctrica de Río Blanco, o sea falta de capacidad o autoridad en el Comisionado del Interior para interponer dicho procedimiento a nombre y en representación del Pueblo de Puerto Rico, no procediendo el auto de mandamus en ningún caso cuando se solicita contra una corte inferior interesando que resuelva una controversia en cierta y determinada forma como se pretende sea ordenado a la corte inferior en este caso.

 Conforme surge de los antecedentes expuestos, todos los cuales resultan de la petición de mandamus, el juez demandado en ningún momento rehusó conocer de las dos mociones tituladas "Declaración de adquisición" y "Moción sobre entrega material", en relación con las cuales recayó la resolución que ha provocado este recurso de mandamus. Por el contrario el juez asumió jurisdicción y correcta o equivocadamente ejercitó su discreción judicial, y resolvió la cuestión. De manera, pues, que el juez no rehusó actuar, ni como se dice en la súplica de la petición de mandamus, declaró carecer de jurisdicción. Siendo ello así, el claro propósito de esta petición de mandamus no es otro que revisar la resolución del juez inferior. En otras palabras, utilizar el auto de mandamus como si se tratase de un recurso de apelación o de revisión.

Que ése es el propósito perseguido por el demandante al instar este procedimiento de mandamus surge inequívocamente de los siguientes párrafos de su alegato, presentado el 16 del actual, en que dice:

"Una vez más afirmamos que el propósito único de este procedimiento de mandamus es obtener una revisión del criterio del juez demandado, quien sostiene que el Comisionado del Interior no está facultado por ley para promover el litigio de expropiación forzosa a nombre de El Pueblo de Puerto Rico.

"Si este Hon. Tribunal encuentra que el Comisionado del Interior tiene autoridad legal a ese efecto, el título de dominio absoluto de las propiedades envueltas en el litigio de expropiación forzosa

está ahora investido en el Pueblo de Puerto Rico, y éste tiene el derecho absoluto a que el Juez demandado decrete la entrega material de dichas propiedades, todo ello por mandato de la ley núm. 2 de abril 1 de 1941, sin intervención de carácter discrecional por parte del juez demandado, excepto en cuanto a la forma en que se ha de efectuar la entrega material."

¿Procede en tales circunstancias la expedición del auto de mandamus solicitado?

Nuestra ley de mandamus en su artículo 2 (artículo 650 del Código de Enjuiciamiento Civil, ed. 1933), al determinar las funciones del auto de mandamus, prescribe lo siguiente:

"Artículo 650.—El auto de mandamus podrá dictarse por el Tribunal Supremo o por las Cortes de Distrito o por cualquiera de sus magistrados o jueces cuando se hallen en el ejercicio de sus funciones o en sus oficinas, y se dirigirá a cualquier tribunal inferior, corporación, junta o persona obligada al cumplimiento de un acto que la ley particularmente ordene como un deber resultante de un empleo, cargo o función pública; pero aun cuando puede requerir a un tribunal inferior o a cualquiera de sus jueces para que adopte este criterio o para que proceda al desempeño de cualquiera de sus funciones, *el auto no puede tener dominio sobre la discreción judicial.*"

En 18 Ruling Case Law 295 se expone la regla aplicable con admirable claridad, en los siguientes términos:

"Uno de los antiguos usos del auto de mandamus era obligar a actuar a las cortes inferiores en los asuntos ante ellas dentro de su jurisdicción. Si, por lo tanto, rehusaban ejercitar sus funciones judiciales, mandamus era el remedio adecuado para ponerlas en acción, aunque existen ciertas excepciones bien establecidas. La principal de ellas es que si bien una corte inferior puede ser obligada a actuar en un asunto dentro de su jurisdicción, sin embargo no puede ser controlada en su discreción; es decir, que el remedio no procede para determinar en qué sentido deberán resolver o cómo deberán ejercitar sus poderes, debiendo limitarse el auto a ordenar al juez y a la corte ante la cual penda una causa, a que proceda a oírla y a resolverla. Aun cuando un acto sea de carácter ministerial, se ha resuelto que si su debida ejecución envuelve el uso de discreción, no procede el mandamus para ordenar que el asunto se decida en determinado sentido. Pero si el juez rehusa ejercitar su discreción o actuar en cualquier forma que fuere, cuando su obligación es

actuar, puede expedirse el auto para obligarlo a proceder. Resumiendo, puede recurrirse al mandamus adecuadamente y con frecuencia se recurre a dicho remedio para obligar a los tribunales a actuar cuando ellos rehusan y deben hacerlo, pero no para indicarles o controlarles su discreción judicial; para obligar a una corte a oír y resolver cuando tiene jurisdicción, pero no para determinarle de antemano la decisión que deba emitir; para exigirles que procedan hasta dictar la sentencia, pero no para determinar y prescribir la que deba ser dictada."

Véanse también las monografías sobre la materia en 4 A.L.R. 582, y 82 A.L.R. 1163.

En el mismo sentido se ha pronunciado la Corte Suprema de Estados Unidos en el caso de *Interstate Commerce Commission* v. *U. S.*, 289 U. S. 385, citado por la interventora. En dicho caso se radicó una querella por Birch Valley Lumber Co. contra ciertos porteadores por ferrocarril dedicados al comercio entre estados, alegando que las tarifas de los porteadores indebidamente perjudicaban a la querellante y establecían un discrimen a favor de sus competidores. La comisión resolvió que las tarifas de los porteadores indebidamente perjudicaban a la querellante y establecían un discrimen a favor de sus competidores, pero que la prueba no justificaba la concesión de daños.

De acuerdo con la ley titulada "Interstate Commerce Commission Act" es ilegal por parte de un porteador conceder una indebida preferencia a favor de una persona o localidad, o someter a una desventaja indebida a cualquier persona o localidad, y prescribe que el infractor es responsable de la totalidad de los daños que causare por su acto ilegal. Dicha ley autoriza a la Interstate Commerce Commission al oír una querella de esta naturaleza, a determinar los daños y ordenar su pago.

No conforme Birch Valley Lumber Company con esta decisión, instó un recurso de mandamus en la Corte Suprema del Distrito de Columbia para que se ordenase a la Comisión a que fijase y concediese los daños de acuerdo con deter-

minada fórmula. Dicha corte rehusó expedir el auto, apelando entonces la compañía para ante la Corte de Apelaciones del Distrito de Columbia, la que revocó la sentencia de la corte inferior y ordenó la expedición del mandamus solicitado. Recurrió la comisión para ante la Corte Suprema de los Estados Unidos y al revocar la sentencia de la Corte de Apelaciones del Distrito de Columbia, el Tribunal, por voz de su Juez Asociado Sr. Cardozo, se expresó así:

"Errores de derecho en el cumplimiento de una función esencialmente judicial no están sujetos a corrección por medio de un mandamus como tampoco lo están los errores de hecho. Si la comisión hubiera rehusado oír la reclamación, o habiendo resuelto que procedía la condena de daños, hubiese rehusado ordenar su pago, hubiera podido recurrirse al mandamus para obligarla a cumplir su deber. Pero eso no fué lo que sucedió en este caso. La comisión oyó la querella y procedió a su decisión. Si se sostuviese el auto de mandamus, el resultado no sería obligar a la comisión a resolver la causa, puesto que ya lo hizo; el resultado sería compelerla a dictar una sentencia en un sentido determinado. La regla de que ésa no es una función del auto, es elemental. El mandamus es un remedio apropiado para obligar a un funcionario judicial a que actúe. No puede usarse como un sustituto del recurso de apelación o del auto de error para indicarle la forma en que debe actuar. (Citas.)"

Si fuésemos a dictar el auto perentorio de mandamus, tendríamos que revisar la resolución del juez inferior y resolver que es errónea por no haber interpretado correctamente las leyes invocadas por el demandante en apoyo de la alegada autoridad del Comisionado del Interior para instar el procedimiento de expropiación forzosa en representación de El Pueblo de Puerto Rico. Si así lo hiciéramos, infringiríamos el artículo 2 de la Ley de Mandamus antes transcrito, a la vez que nos colocaríamos en manifiesto conflicto con aquella parte de la opinión de la Corte Suprema de los Estados Unidos en el citado caso de *Interstate Commerce Commission* v. *U. S.*, supra, que resuelve que "errores de derecho en el cumplimiento de una función judicial no están sujetos a corrección por medio de mandamus."

Convenimos con el demandante en que existe una marcada analogía entre el que nos ocupa y aquella larga línea de casos que comenzando con *Dyer* v. *Rossy,* 23 D.P.R. 772, constantemente ha venido haciendo uso del remedio extraordinario de mandamus para revisar la discreción judicial de tribunales inferiores al rehusar ordenar el sobreseimiento y archivo de causas criminales cuando sin justa causa el acusado ha sido privado del derecho al juicio rápido que le garantizan el artículo 2 de la Ley Orgánica y el 448 del Código de Enjuiciamiento Criminal. En verdad, la doctrina aquí enunciada no es fácilmente distinguible de la establecida en dichos casos, a menos que penetremos en la razón que justificó esa desviación de la regla general. La regla seguida en dichos casos fué tomada de *Ex Parte Ford,* (Cal.) 116 P. 757; *McLeod* v. *Graham,* (Okla.) 118 P. 160, y otros que se citan en *Dyer* v. *Rossy.* En los casos del continente últimamente citados, se reconoce el derecho al juicio rápido que tiene todo acusado para que si es inocente, rápidamente se le exonere de responsabilidad, y sea excarcelado si para responder de la acusación estuviere privado de su libertad. No obstante el reconocimiento general de este derecho, un juez que deseare actuar arbitrariamente podría posponer por tiempo indefinido la celebración del juicio y si el acusado estuviere en libertad bajo fianza, jamás podría librarse de las molestias e inconvenientes que la pendencia de una acusación conlleva, a menos que se le permitiese recurrir al remedio de mandamus para obligar al juez a celebrarle el juicio.

Se arguye en los referidos casos de *Ford* y *McLeod,* supra, que de no poder recurrirse al mandamus en la situación expuesta, se daría el caso de existir un perjuicio sin un remedio, pues el de apelación sería ineficaz. Esto es así porque un acusado que se hallare en libertad provisional mediante prestación de fianza, no podría hacer revisar la conducta del juez hasta que éste, cuando a bien lo tuviere, celebrase el juicio. Si como resultado del mismo el acusado

fuese declarado inocente, no existiendo sentencia condenatoria, él no tendría de qué apelar y no podría revisar la actuación del juez que arbitrariamente le privó de su indicado derecho constitucional.

Ofreciendo un remedio eficaz a esta situación, se dice en *McLeod* v. *Graham,* supra:

"La justificación de la tardanza en la celebración del juicio es cuestión que va dirigida a la discreción de la corte sentenciadora y si ella abusó de su discreción, su decisión puede ser revisada por mandamus." T. cit., pág. 163.

La regla adoptada en *Dyer* v. *Rossy,* supra, y casos que lo siguen, está circunscrita a hacer valer el derecho constitucional a un juicio rápido. Por consiguiente, no es aplicable al presente caso, donde no existe el motivo que justificó la desviación de la regla general sancionada por la jurisprudencia.

Por lo expuesto, *procede desestimar la petición de mandamus y anular el auto alternativo que se expidió en 23 de junio de 1941.*

El Juez Asociado Sr. Todd, Jr., no intervino.