PER curiam:
Hoy nos corresponde determinar si procede la imposi-ción de sanciones disciplinarias contra un juez o una jueza por demorarse en dictar Sentencia en un caso sometido ante su consideración.
Veamos los hechos que dieron génesis a la controversia en el caso de autos.
*520 I
El 12 de marzo de 2008, los señores Ángel A. Pagán Ramos y René Pagán García, y las señoras María E. Rodrí-guez Casillas, Mariexy Pagán Rodríguez y Ana H. García Santana (en adelante conjuntamente como los quejosos), presentaron una queja juramentada contra la Hon. Carmen H. Pagani Padró por su proceder en el caso María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros, Civil Núm. FDP-90-0309.
Según consta del expediente, este último caso se inició el 18 de junio de 1990 cuando los quejosos y otros deman-dantes instaron una demanda en daños y perjuicios en el Tribunal de Primera Instancia, Sala Superior de Carolina, contra el Estado Libre Asociado de Puerto Rico, la Univer-sidad de Puerto Rico, la Administración de Servicios Médi-cos de Puerto Rico, el Hospital San Carlos y otros demandados. En dicho petitorio, los demandantes alegaron que hubo impericia en el tratamiento médico que se le brindó al occiso Elexsy A. Pagán García luego de que éste sufriera múltiples traumas como consecuencia de un acci-dente automovilístico.
Luego de varios incidentes procesales, se celebró el jui-cio del caso ante la Hon. Carmen H. Pagani Padró.(1) Este se llevo cabo de forma fragmentada desde el 25 de octubre de 1993 hasta el 10 de octubre de 1996, y se extendió por un período de más de treinta (30) días.
Según surge del expediente, la prueba documental y testifical presentada durante el juicio fue voluminosa. Comparecieron a testificar un total de trece (13) peritos médicos, dieciocho (18) galenos que brindaron tratamiento médico al occiso o que testificaron sobre el funcionamiento *521 de las facilidades hospitalarias en las que este fue aten-dido, y diecisiete (17) testigos adicionales.
Luego de que concluyera el desfile de prueba, las partes se reunieron en cámara con la Hon. Carmen H. Pagani Padró. Esta última solicitó a las partes que cada una so-metieran un Memorando de Determinaciones de Hechos, el cual presentaron posteriormente. Así las cosas, el 6 de marzo de 1997, el caso María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros, supra, quedó sometido en espera de que se dictara Sentencia.
Mientras tanto, el 9 de abril de 1997, la Hon. Carmen H. Pagani Padró fue notificada que sería trasladada a la Re-gión Judicial de San Juan. Ante esta situación, la jueza Pagani Padró notificó al Juez Administrador del Centro Judicial de Carolina una lista de los casos sometidos que llevaría consigo a la Región de San Juan. Inicialmente, por instrucciones de la jueza Pagani Padró, el expediente del caso María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros, supra, permaneció bajo la custodia de la Secretaría del Centro Judicial de Carolina debido a lo voluminoso que era. Sin embargo, el 14 de junio de 2000 dicho legajo fue trasladado a la Región de San Juan, según lo ordenara la jueza Maritza Ramos Mercado, Jueza Admi-nistradora Interina del Centro Judicial de Carolina.
Posteriormente, el 19 de septiembre de 2005, la parte demandante presentó un escrito intitulado Moción Infor-mativa, en el que solicitaba que el caso María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros, supra, fuese resuelto lo antes posible.
Por su parte, la jueza Pagani Padró celebró dos (2) vistas con relación al mencionado caso, una el 27 de jimio y otra el 19 de julio de 2006, con el propósito de que las partes auscultaran la posibilidad de llegar a un acuerdo transaccional. No obstante, dicha transacción nunca se logró. Ante el tiempo transcurrido, el 23 de febrero de *522 2007, la parte demandante presentó nuevamente una mo-ción para la pronta resolución del caso.
Finalmente, luego de varios incidentes procesales, el 4 de mayo de 2007 se dictó Sentencia en la que se ordenó la desestimación de la demanda. Ante esta situación, el 12 de marzo de 2008 los quejosos instaron una queja ante la Ofi-cina de Administración de los Tribunales contra la Hon. Carmen H. Pagani Padró. Adujeron que la jueza faltó a su deber de impartir justicia con prontitud y eficacia al tar-darse más de diez (10) años en dictar Sentencia en el men-cionado caso.
Luego de haber realizado una investigación sobre lo ale-gado, el 16 de marzo de 2009 la Directora Administrativa de los Tribunales presentó un informe relacionado con la investigación ante la Comisión de Disciplina Judicial. En dicho escrito se indicó que la dilación de la jueza en dictar Sentencia en el caso María Rodríguez Casillas y otros u. Universidad de Puerto Rico y otros, supra, constituyó una violación a su obligación de adjudicar las controversias ante su consideración de forma diligente.
Después de haber evaluado el informe anterior, la Co-misión de Disciplina Judicial determinó que existía causa suficiente para creer que hubo posibles violaciones a los Cánones 4, 8,12 y 17 de Ética Judicial, 4 L.P.R.A. Ap. IV-B, y a la Regla 24(a) de las Reglas para la Administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico, 4 L.P.R.A. Ap. II-B (en adelante Reglas para la Administración del Tribunal de Primera Instancia), y ordenó la presentación de la querella correspondiente. En consecuencia, el 4 de mayo de 2009, la Directora Admi-nistrativa de los Tribunales presentó una querella contra la Hon. Carmen H. Pagani Padró ante la Comisión de Dis-ciplina Judicial por alegada violación a dichas disposicio-nes legales.
Por su parte, el 22 de junio de 2009 la jueza Pagani Padró presentó una Contestación a la Querella. Admitió *523 que había tardado más de lo usual en resolver el mencio-nado caso. Sin embargo, señaló que existían varias circuns-tancias que justificaban la demora. Adujo que el caso Ma-ría Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros, supra, ameritaba mucho tiempo de análisis antes de que se dictara la Sentencia debido a la volumi-nosa prueba documental y testifical que se presentó, y a la complejidad de los aspectos técnicos que involucraba el pleito. También argüyó que parte de la dilación se debió a que las partes dialogaron con el propósito de alcanzar un acuerdo transaccional, por lo que estaba a la expectativa de lo que éstas acordaran.
La jueza Pagani Padró sostuvo que la demora en dictar Sentencia en el mencionado caso era una excepción a la forma en que ella desempeñaba sus labores ya que, a pesar del alto volumen de casos que tenía asignados, alegada-mente siempre se mantuvo resolviendo mensualmente igual o mayor cantidad de pleitos que sus compañeros jueces. Además, indicó que la Comisión de Evaluación Judicial realizó un Informe sobre la labor de la Hon. Carmen H. Pagani Padró durante sus diecisiete (17) años en la Ju-dicatura, en el cual calificó a la Jueza “en un nivel 5 de ejecución, lo cual implica[ba] que sus ejecutorias sobrepasa [ban] por mucho lo esperado y contribu [ían] a proyectar un alto nivel de calidad”.(2)
La vista en su fondo se llevó a cabo el 13 de octubre de 2009. Al comienzo de esta, las partes presentaron una Pro-puesta Transaccional. Entre las estipulaciones que se in-cluyeron en este acuerdo, se convino que la Directora Ad-ministrativa de los Tribunales retiraría el cargo por violación al Canon 12 de Etica Judicial, supra. Además, se indicó que la querellante reconocía la dedicación y el com- *524 promiso de la jueza en el desempeño de sus funciones judiciales.
Por otro lado, la Hon. Carmen H. Pagani Padró aceptó que el caso María Rodríguez Casillas y otros v. Universi-dad de Puerto Rico y otros, supra, no era un ejemplo de la forma en que debía llevar a cabo sus labores como jueza y que se trataba de una situación que no debía repetirse. Indicó que el término de diez (10) años en dictar Sentencia no era razonable, pero que las circunstancias del caso jus-tificaban la tardanza. Además, reconoció la importancia de que los jueces y las juezas resolvieran los casos con pronti-tud y de que utilizaran todos aquellos recursos de la Ofi-cina de Administración de los Tribunales que fuesen necesarios.
Luego de haber examinado la Propuesta Transaccional, las estipulaciones de hecho y la prueba documental some-tida por las partes, la Comisión de Disciplina Judicial emi-tió su Informe el 24 de diciembre de 2009. Concluyó que la Hon. Carmen H. Pagani Padró no había incurrido en una conducta que infringiera los Cánones de Etica Judicial, ya que la demora en dictar Sentencia en el caso María Rodrí-guez Casillas y otros v. Universidad de Puerto Rico y otros, supra, constituía una situación aislada en su historial profesional. También señaló que el mencionado caso era atípico, ya que resultó ser sumamente complejo por la abundante prueba documental y testifical que se presentó. Además, la Comisión determinó que del expediente no sur-gía gestión administrativa alguna dirigida a dar segui-miento a la resolución del caso luego de que este fuera trasladado a la Región Judicial de San Juan. A tales efec-tos, la Comisión de Disciplina Judicial recomendó la deses-timación y el archivo de la querella presentada contra la jueza Pagani Padró.(3)
*525 Inconforme, la Directora Administrativa de los Tribuna-les solicitó reconsideración. No obstante, esta fue dene-gada. Así las cosas, el caso quedó sometido ante nuestra consideración.
Luego de haber expuesto los hechos del presente caso, procedemos a analizar las normas de derecho aplicables.
II
La Comisión de Disciplina Judicial es un organismo colegiado nombrado por este Tribunal para auxiliarle en el ejercicio de su responsabilidad con los asuntos relacionados con la disciplina y el retiro involuntario de jueces o juezas. Véase Art. 6.005 de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, conocida como Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, 4 L.P.R.A. sec. 25m; Regla 12(a) de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B. Como parte de sus funciones, la Comisión de Disciplina Judicial podrá considerar aquellas querellas en las que se haya determinado causa probable con respecto a cualquier juez o jueza por supuestamente haber incurrido en una conducta que pueda conllevar la imposición de cualquier sanción disciplinaria por violación a la ley, a los Cánones de Etica Judicial, al Código de Etica Profesional y a las órdenes y normas administrativas aplicables. Véanse: Reglas 4(n) y 12(g) de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B. Asimismo, la Comisión de Disciplina Judicial aquilata la prueba para formular determinaciones de hechos, conclusiones de derecho y recomendaciones en los procesos disciplinarios contra integrantes de la Judicatura. In re Ruiz Rivera, 168 D.P.R. 246, 253 (2006). Véase Regla 12(g) de Disciplina Judicial, supra.
*526 En el caso de autos, la Comisión de Disciplina Judicial tuvo la oportunidad de dilucidar la querella presentada contra la Hon. Carmen H. Pagani Padró, en la que se le imputó la violación a los Cánones 4, 8 y 17 de Etica Judicial, supra, y a la Regla 24 para la Administración del Tribunal de Primera Instancia, supra, por la tardanza en resolver el caso María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros, supra.
El Canon 8 de Ética Judicial, supra, dispone que los jueces y las juezas deben ser laboriosos, prudentes, serenos e imparciales al llevar cabo sus labores, y que deben enmarcar sus funciones adjudicativas en el estudio del Derecho y en la diligencia orientada a descubrir los hechos esenciales de cada controversia. A su vez, el Canon 17 del citado cuerpo reglamentario exige que los jueces y las juezas sean “diligentes en la administración del proceso judicial de los asuntos sometidos ante su consideración y [procuren] que las partes también lo sean”. 4 L.P.R.A. Ap. IV-B. De igual forma, el Canon 4 de Ética Judicial, supra, dispone que los jueces y las juezas tienen el deber de cumplir “cuidadosa y diligentemente las obligaciones administrativas que les imponen las leyes y los reglamentos aplicables a la Rama Judicial”. 4 L.P.R.A. Ap. IV-B.
Por otro lado, la Regla 24(a) para la Administración del Tribunal de Primera Instancia, supra, establece que los jueces y las juezas resolverán los casos contenciosos atendidos en sus méritos y las mociones de sentencia sumaria dentro de los noventa (90) días desde la fecha cuando fueron sometidos para adjudicación. Sin embargo, dicho término puede extenderse razonablemente “cuando la naturaleza del asunto o alguna causa extraordinaria lo hagan necesario”. 4 L.P.R.A. Ap. II-B, R. 24.
Como podemos ver, todas estas normas están encamina-das a garantizar que los jueces y las juezas desempeñen sus funciones diligentemente y que los asuntos ante los tribunales se resuelvan de forma rápida y eficaz. Tales pre- *527 ceptos legales son de medular importancia, ya que en nues-tro ordenamiento impera el principio rector de que las con-troversias ante los tribunales se resuelvan de manera justa, rápida y económica. Véanse: Insular Highway v. A.I.I. Co., 174 D.P.R. 793 (2008); Lluch v. España Service Sta., 117 D.P.R. 729, 751 (1986).
A pesar de que se fomenta la pronta resolución de las controversias ante nuestros foros judiciales, también es una realidad innegable que los jueces en nuestros tribuna-les tienen una carga pesada de trabajo debido al alto volu-men de pleitos instados por los ciudadanos. Véase D.M. Helfeld, El seminario sobre la demora judicial diseño, re-sultados y recomendaciones, 77 (Núm. 4) Rev. Jur. U.P.R. 891, 897-898 (2008). Como señala el profesor Helfeld en el mencionado artículo: “[l]o que no se sabe, por falta de es-tudio sobre el asunto, es cuál debe ser la carga de trabajo que les permita a los jueces cumplir sin incurrir en demora excesiva.” Id., pág. 898. A esto debemos añadir que, según el National Center for State Courts, nuestros tribunales primarios no cuentan con suficientes recursos humanos para atender los casos que se presentan ante dichos foros.(4) C.J. Sagardía Abreu, Consideraciones generales so *528 bre la demora judicial en el Tribunal de Primera Instancia, 77 (Núm. 4) Rev. Jur. U.RR. 961, 992 (2008). Esto, sin duda, es un factor adicional que retrasa la adjudicación de las controversias que llegan ante la consideración de los jueces y las juezas de instancia.
A su vez, no es un secreto la existencia de casos suma-mente complejos que involucran una multiplicidad de par-tes, un extenso descubrimiento de prueba y controversias de hechos o de derecho complejas y técnicas. Véanse: Amaro González v. First Fed. Saos., 132 D.P.R. 1042, 1055 esc. 15 (1993); Vellón v. Squibb Mfg., Inc., 117 D.P.R. 838, 847 (1986). De ahí que la manejabilidad de un caso puede complicarse por su grado de dificultad, lo que a su vez puede producir una demora en el quehacer judicial.
Asimismo debemos señalar que, en nuestro ordenamiento, las partes afectadas por la demora tienen a su disposición diversos remedios legales para lograr que las controversias planteadas se resuelvan con prontitud. Si las partes consideran que ya ha transcurrido un término razonable sin que se haya dictado sentencia en determinado caso, pueden presentar mociones en las que alerten al tribunal sobre la tardanza y en las que le soliciten que resuelva su caso. Véase R.H. Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 5ta ed., San Juan, Ed. Lexisnexis, 2010, See. 2501, pág. 264. Véase, además, Regla 8.4 de Procedimiento Civil, 32 L.P.R.A. Ap. V. Incluso, en casos extremos, podrían instar un recurso de mandamus para obligar al juez o a la jueza a que cumpla con su deber ministerial de resolver el caso sometido ante su consideración. Véanse: Purcell Ahmed v. Pons Núñez, 129 D.P.R. 711, 714 (1992); Espina v. Calderón, Juez, y Sucn. Espina, Int., 75 D.P.R. 76, 81 — 82 (1953); Pueblo v. La Costa, Jr., Juez, 59 D.P.R. 179, 188 (1941).(5) Véase, ade- *529 más, Art. 649 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3421.
Como ya apuntamos, el Tribunal de Primera Instancia tiene el deber ineludible de garantizar que los procedimientos se ventilen sin demora, con miras a que se logre una justicia rápida y eficiente. Heftier Const. Co. v. Tribunal Superior, 103 D.P.R. 844, 846 (1975). Ahora bien, dicho deber tiene que ir acompañado de un mínimo de diligencia de las partes. Por eso, hemos señalado que le corresponde tanto al tribunal como a las partes velar que los procedimientos en los tribunales se tramiten de forma justa, rápida y económica. Bco. Des. Eco. v. AMC Surgery, 157 D.P.R. 150, 157 (2002).
Lo anterior nos conduce a colegir que la mera dilación en dictar sentencia no debe violar algún deber ético que conlleve sanciones. Es decir, el que un juez se demore en disponer de los casos ante su consideración no amerita, por sí solo, que se acuda a la vía disciplinaria. Véase In re Alvino, 494 A.2d 1014 (New Jersey 1985). Esto, porque entendemos que la dilación en cuestión podría deberse a factores exógenos a los jueces y juezas, como la sobrecarga de trabajo que puedan tener, la dificultad y complejidad de las controversias presentadas ante su consideración por las partes del caso y la inercia de las partes al no exigirle al juez o la jueza que resuelva con prontitud su caso. En otras palabras, el atraso de los jueces y las juezas no necesariamente responde a su incompetencia o abulia. (6)
*530 Lo que sí puede dar lugar a sanciones disciplinarias son las motivaciones indebidas y antiéticas que causen la de-mora en el trámite de uno o más casos, por ejemplo, el que un juez demore el trámite del caso para beneficiar a alguna de las partes o que postergue injustificadamente la dispo-sición de un caso para beneficiarse a sí mismo o a algún tercero. En estas circunstancias, la sanción se deberá a las motivaciones que constituyan una violación a los cánones, y no a la demora per se.
Reconocemos, además, que podría estar sujeto a una sanción disciplinaria aquella dilación que esté relacionada razonablemente con un patrón de incompetencia manifiesta del juez o de la jueza en el desempeño de sus funciones judiciales. En estos casos, se podrá sancionar a un magistrado cuando las circunstancias demuestren que la demora judicial fue ocasionada por un comportamiento repetitivo que trasluzca una carencia mínima de diligencia en la disposición de los casos. Así, no basta con que exista una mera dilación. Será necesario ver el historial del juez o la jueza al solucionar otros casos, de tal forma que se pueda colegir razonablemente que su tardanza en la adjudicación no corresponde a un hecho aislado, sino que es la consecuencia de su incompetencia para disponer con diligencia los casos que tiene o ha tenido ante su consideración. Véase In re Baber, 847 S.W.2d 800, 803 (Missouri 1993) (“Accordingly, when incompetency is alleged the Court’s task is to determine whether the conduct at issue establishes that the respondent lacks the requisite ability, knowledge, judgment, or diligence to consistently and capably discharge the duties of the office he or she holds”). Véase, además, In re Hunter, 823 So.2d 325, 336 (D.C. Louisiana 2002).
De esta manera, se logra un justo balance entre el inte-rés de la ciudadanía en que los jueces y las juezas que tienen ante su consideración sus causas de acción las atiendan con diligencia y el interés en preservar las facul- *531 tades discrecionales y la independencia judicial de estos últimos. En ese sentido, nos aseguramos de que cuando se sancione disciplinariamente a un juez por la dilación en la adjudicación de los casos, medien razones de peso.
Conforme lo esbozado, somos de la opinión de que la demora de un juez o una jueza en dictar sentencia en un caso, por sí sola, no conlleva la imposición de sanciones disciplinarias. La tardanza de un juez o de una jueza al disponer de un caso es un asunto inherentemente concatenado al trámite del caso. A su vez, el trámite, a diferencia de las motivaciones indebidas que ocasionen una sanción disciplinaria y de la reiterada incompetencia manifiesta, es parte del ejercicio discrecional del juez o la jueza como parte de su independencia de criterio.
Por eso, entendemos que sería impropio disciplinar a un miembro de la Judicatura por la mera tardanza en la solu-ción de un caso ante su consideración. Resolver lo contrario crearía un precedente peligroso que le otorgaría poderes ilimitados y omnímodos a la Oficina de Administración de los Tribunales y a la Comisión de Disciplina Judicial para inmiscuirse en los asuntos discrecionales de los jueces y las juezas que forman parte de nuestro sistema judicial. Ello tendría el efecto de presionar indebidamente a los magis-trados y magistradas en su quehacer judicial.
Por lo tanto, en casos como el de autos, según el esquema reglamentario vigente, la queja que se presente no debe prosperar. Es decir, cuando la Oficina de Administración de los Tribunales remita a la Comisión de Disciplina Judicial un informe de investigación sobre una queja que impute la falta de diligencia de un juez o de una jueza al resolver un caso, la Comisión deberá evaluar si el juez o la jueza promovida ha incurrido en un patrón de incompetencia manifiesta o ha retrasado la adjudicación de un caso ante su consideración por motivaciones indebidas. Cuando *532 ninguna de estas circunstancias esté presente, la Comisión no deberá ordenar la presentación de la querella.(7)
Con este marco teórico, abordamos la controversia del caso de autos.
III
En primer lugar, es menester señalar que el caso María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros, supra, fue sumamente complicado y de difícil manejo. Éste contó con una extensa prueba documental, la vista en su fondo se extendió por más de treinta (30) días y comparecieron cuarenta y ocho (48) testigos. Es decir, se trataba de un caso que debía ser atendido con deteni-miento.
En segundo lugar, la Hon. Carmen H. Pagani Padró rea-lizó varios esfuerzos para lograr la pronta resolución del mencionado caso luego de que éste quedara sometido en espera de que se dictara Sentencia. La jueza tomó la ini-ciativa de celebrar varias vistas con los abogados de las partes para auscultar la posibilidad de una transacción y poder finalizar el pleito lo más pronto posible.
Por otro lado, según surge del expediente, no fue hasta el 19 de septiembre de 2005, o sea, ocho (8) años después de que el caso quedara sometido en espera de que se dic- *533 tara Sentencia, que el abogado de la parte demandante presentó una moción ante el Tribunal de Primera Instan-cia, Sala de San Juan, solicitando que este se resolviera lo antes posible. Durante esos ocho (8) años, tanto la parte demandante como la parte demandada se cruzaron de brazos. Ninguna de las partes presentó una moción en la que alertaran al tribunal sobre la demora. Tampoco insta-ron un recurso de mandamus solicitando que se ordenara a la Hon. Carmen H. Pagani Padró que dictara Sentencia en el mencionado caso. No fue hasta que la jueza Pagani Pa-dró emitió la Sentencia que desestimó la demanda, que los demandantes (parte desfavorecida por el dictamen) deci-dieron instar la queja en su contra. Por ende, estamos frente a un caso caracterizado, no solamente por el atraso de la jueza Pagani Padró al dictar la Sentencia, sino tam-bién por la desidia de las partes en controversia al no exi-gir con mayor prontitud dicho dictamen.
En ese sentido, resulta ser una antinomia el que las partes permitan que se dicte Sentencia en un caso luego de transcurrido un término considerable —sin que hayan ad-vertido al tribunal sobre la dilación— para luego acudir ante esta Curia solicitando que se le imponga sanciones al juez o a la jueza que atendió la controversia por no haberla resuelto con premura.
Lo anterior nos convence de que la Hon. Carmen H. Pa-gani Padró no pudo haber incurrido en una violación ética sólo por haberse dilatado diez (10) años en dictar Sentencia en el caso María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros, supra. Más aún en este tipo de si-tuación, donde existen otros remedios legales (mociones, mandamus) que hubiesen ejercido presión sobre la Hon. Carmen H. Pagani Padró para que atendiera el referido caso dentro de un período de tiempo razonable.
Por el mismo fundamento, procede desestimar la quere-lla presentada por la Directora Administrativa de los Tribunales contra la jueza Pagani Padró. Como hemos seña- *534 lado, la dilación de un juez o de una jueza en dictar sentencia en un caso, por sí sola, no acarrea la imposición de sanciones disciplinarias. Además, no surge de los autos que la jueza Pagani Padró tuviera alguna motivación inde-bida para postergar la solución del caso en controversia; tampoco que haya incurrido en un patrón de incompeten-cia manifiesta en la adjudicación de los casos ante su consideración. Así también lo concluyó la Comisión de Dis-ciplina Judicial al exonerar a la jueza Pagani Padró de haber incurrido en conducta constitutiva de infracción a los Cánones de Ética Judicial por la dilación en resolver el caso María Rodríguez Casillas y otros por tratarse de un caso aislado en el historial profesional de esta.
En ese tenor, creemos que la tardanza de la jueza en resolver María Rodríguez Casillas y otros fue una actua-ción aislada en su historial profesional. Aunque la jueza Pagani Padró fue relevada en tres ocasiones de sala para atender casos que tenía sometidos y pendientes de resolu-ción, esto no significa, ipso facto, que haya sido incompetente. Por el contrario, en su última evaluación, la Comisión de Evaluación Judicial calificó a la jueza Pagani Padró en un nivel 5 de ejecución, lo cual es sinónimo de que sus ejecutorias sobrepasaban por mucho lo esperado y de que proyectaba un alto nivel de calidad.
Debemos añadir que dicha dilación no pasará desaper-cibida, puesto que esta podrá ser considerada por la Comi-sión de Evaluación Judicial a la hora de pasar juicio, nue-vamente, sobre el desempeño de la Hon. Carmen H. Pagani Padró. Ello nos parece que es un buen disuasivo para que los jueces y las juezas procuren atender con dili-gencia los casos que tengan ante sí.
Ciertamente, el problema de la demora judicial en las distintas instancias de nuestro sistema judicial no es novel. F. Hernández Denton, La Administración Eficiente de la Justicia, 77 (Núm. 4) Rev. Jur. U.P.R. 915, 918 (2008). Somos conscientes de que este problema podría afectar la *535 confianza de la ciudadanía en su sistema de justicia. íd. Ahora bien, por más indeseables que sean los atrasos en la adjudicación y tramitación de los asuntos ante los distintos tribunales de este país, ello no debe utilizarse como motivo para sancionar disciplinariamente a los jueces y las juezas que incurran en una mera dilación al disponer de un caso.
Por eso, si bien hay que hacerle frente a este problema a través de todos los mecanismos posibles, creemos que su solución no puede estar cimentada en el atropello de los miembros de la Judicatura, máxime cuando se ha recono-cido que “la tardanza en resolver los casos tiene múltiples causas”. Hernández Denton, supra, pág. 919. Así, por ejem-plo, estudios que se han realizado sobre la carga de trabajo a nivel del Tribunal de Primera Instancia de Puerto Rico concluyen que los jueces y las juezas superiores no cuentan con el personal de apoyo necesario para llevar a cabo su función judicial. Véase Sagardía Abreu, supra, pág. 992.
En fin, a la luz de los fundamentos esbozados, resolve-mos que no procede sancionar a la Hon. Carmen H. Pagani Padró por haberse demorado diez (10) años en dictar Sen-tencia en el caso María Rodríguez Casillas y otros v. Uni-versidad de Puerto Rico y otros, supra.
IV
Por los fundamentos que anteceden, se desestima la que-rella presentada contra la Hon. Carmen H. Pagani Padró.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton emitió una opinión disidente y concurrente. La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión disidente.

 Antes de que el caso fuese asignado a la Hon. Carmen H. Pagani Padró, dos (2) jueces ya habían intervenido en otras etapas del pleito.

 Informe final de evaluación judicial de la Hon. Carmen H. Pagani Padró, preparado por la Comisión de Evaluación Judicial, Anejo II de la Contestación a querella, pág. 2.

 El Ledo. Carlos E. Ramos González, Comisionado Asociado, emitió un Voto Explicativo en el cual concurre con la recomendación de la Comisión de Disciplina Judicial. Entiende que, aunque la dilación en dictar Sentencia podría constituir una *525 violación ética, este caso es aislado en el historial profesional de la Hon. Carmen H. Pagani Padró y que sería injusto imponerle sanciones ante su trayectoria judicial ejemplar.

 Estudio realizado por el National Center for State Courts, el cual finalizó en el 2003. Véase National Center for State Courts, Workload Assessment Model for the Puerto Rico Superior Court, Final Report, Court Services Division, Denver, 2003. Posteriormente, el National Center for State Courts publicó otro estudio en el 2008, en el que señaló que Puerto Rico tenía uno de los niveles de esclarecimiento de casos civiles más alto en Estados Unidos. Véase Court Statistics Project, Examining the Work of State Courts: An Analysis of2008 State Court Caseloads, (National Center for State Courts, 2010), pág. 29 (disponible en http://www.ncsconline.org/d_research/ csp/2008_files/ EWSC-2008-Online%20version%20v2.pdf). Asimismo, concluyó que Puerto Rico es una de las jurisdicciones que tiene más jueces y juezas (8.2) por cada cien mil habitantes y donde menos casos se asignaron a los jueces y las juezas (726). íd., pág. 21.
Sin embargo, aunque podamos deducir de ese estudio que en Puerto Rico hay más jueces y juezas por habitantes que en otras jurisdicciones, que hay un nivel alto de esclarecimiento de casos civiles y que a los jueces y las juezas se le asignan menos casos que en otras jurisdicciones, eso no conlleva, necesariamente, que haya desapa-recido el problema de falta de recursos humanos identificado en el estudio de 2003. Incluso, el hecho de que el estudio de 2003 contenga una referencia específica a la falta de recursos por parte de los jueces y las juezas de instancia, mientras el estudio de 2008 guarda silencio sobre este asunto, es insuficiente para concluir que no exista relación entre esa carencia de recursos y la demora judicial.

 Como señalamos en el caso Pueblo v. La Costa, Jr., Juez, 59 D.P.R. 179, 188 (1941):
*529 “'... puede recurrirse al mandamus adecuadamente y con frecuencia se recurre a dicho remedio para obligar a los tribunales a actuar cuando ellos reh[ú]san y deben hacerlo, pero no para indicarles o controlarles su discreción judicial; para obligar a una corte a oír y resolver cuando tiene jurisdicción, pero no para determinarle de antemano la decisión que deba emitir; para exigirles que procedan hasta dictar la sentencia, pero no para determinar y prescribir la que deba ser dictada.’ ”

 Asimismo, entendemos que deben auscultarse otras posibles razones para dicha dilación, como el no contar con los recursos humanos suficientes para atender la carga de trabajo que tienen los jueces y las juezas de primera instancia, y otros mecanismos para evitar esas dilaciones. Véase In re Alvino, 494 A.2d 1014 (New Jersey 1985).

 Cualquier persona interesada con que se investigue la conducta de un juez o de una jueza, puede presentar una queja ante la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales. Regla 5 de Disciplina Judicial, 4 L.RR.A. Ap. XV-B. Si la queja cumple con los requisitos de forma de la Regla 5 de Disciplina Judicial, supra, la Oficina de Asuntos legales lo informará a la Directora o al Director Administrativo de los Tribunales, quien determinará si procede el inicio de la investigación. Regla 6(c) de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B. De así determinarlo, ordenará el inicio de la investigación a la Oficina de Asuntos Legales o a otra persona que designe. íd. Si el informe de investigación expone una conducta que amerite alguna acción disciplinaria, la Directora o el Director Administrativo lo remitirá a la Comisión de Disciplina Judicial. Regla 8(b) de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B. Posteriormente, la Comisión de Disciplina Judicial deberá deter-minar si, a la luz del informe de investigación, existe causa para presentar una querella contra la jueza promovida o el juezpromovido. Regla 12(g)(1) de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B.