ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| **CENTRO DE PERIODISMO INVESTIGATIVO, INC.**<br><br>Recurrido<br><br><br>v.<br><br><br>**RICARDO ROSSELLÓ NEVÁREZ, en su capacidad oficial como Gobernador del ESTADO LIBRE ASOCIADO DE PUERTO RICO; OFICINA DEL GOBERNADOR DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO; AUTORIDAD DE ASESORÍA FINANCIERA Y AGENCIA FISCAL**<br><br>Peticionario | KLCE202400841 | ***Certiorari*** **acogido como APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.:<br>**SJ2017CV00396**<br><br>Sobre: *Mandamus*; Acceso a Información Pública |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de mayo de 2025.

La Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (en adelante "parte peticionaria" o "AAFAF") acude ante nos mediante *Petición de Certiorari* y solicita que revoquemos la *Minuta-Resolución* notificada por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan, el 7 de junio de 2024. Por medio del dictamen recurrido, el foro *a quo* determinó que, en consonancia con la *Sentencia* pronunciada el 16 de febrero de 2021, la parte peticionaria debe producir las comunicaciones de contratistas,

---

[1] Véase *Orden Administrativa DJ 2024-062C* de 6 de mayo de 2025, sobre enmienda a la orden de designación de Paneles en el Tribunal de Apelaciones.

consultores y representantes de la Junta de Supervisión y Administración Fiscal (en adelante "JSAF"), en la medida en que éstas se hayan emitido en representación de la JSAF o se hayan generado en el ejercicio de sus funciones delegadas para cumplir con la Ley PROMESA.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* y se modifica el dictamen impugnado.

**I.**

Surge del expediente ante nuestra consideración que, el 1 de junio de 2017, el Centro de Periodismo Investigativo (en adelante "CPI") presentó una *Petición de Mandamus* sobre acceso a la información, en contra del entonces Gobernador de Puerto Rico, Hon. Ricardo Rosselló Nevares y la Oficina del Gobernador. Como remedio, el CPI solicitó del foro primario que ordenase a las partes promovidas a cumplir inmediatamente con su deber ministerial de proveer la siguiente información:

A. Todos los documentos, informes, cartas, correos electrónicos y cualquier otra información o material intercambiado entre La Fortaleza y la Junta de Control o Supervisión Fiscal, incluyendo, pero sin limitarse a:

     i. Informes semanales de flujo de efectivo, incluyendo todos los ingresos recibidos y todos los gastos incurridos (incluyendo el servicio de la deuda), dividido en categorías.

     ii. Descargas mensuales de los datos de las cuentas de banco y estados de cuenta de todas las principales cuentas bancarias.

     iii. Informe mensual y actualizado al año corriente de cumplimiento con el presupuesto actual aprobado, por partida presupuestaria y por agencia (incluyendo fondos especiales locales y fondos federales).

     iv. Informe mensual y actualizado al año corriente de los ingresos y narrativo acerca de los esfuerzos de recaudación y principales iniciativas del Departamento de Hacienda de Puerto Rico.

     v. Informe mensual de nómina por agencia.

      vi.    Informes mensuales de los fondos federales recibidos y desembolsados por área y por agencia.

      vii.    Informe mensual de todas las obligaciones de deuda que vencen durante el año fiscal corriente y cuáles han sido pagadas.

      viii.    Informe trimestral de la productividad y desempeño de cada agencia con las respectivas métricas y una descripción narrativa.

      ix.    Informe trimestral de las estadísticas clave de Puerto Rico, incluyendo económicas, financieras, sociales y de empleo.

B. Cualquier otro documento intercambiado hasta el 3 de mayo de 2017 entre La Fortaleza y la Junta de Control Fiscal en cumplimiento con la Ley 'PROMESA', o entre el gobierno y sus dependencias y la Junta.

Culminados varios incidentes procesales que resultan innecesarios pormenorizar, el 16 de febrero de 2021, el TPI emitió y notificó la *Sentencia* del caso. Mediante la misma, el foro primario declaró con lugar el recurso extraordinario de *mandamus* presentado por el CPI y, en consecuencia, ordenó al Estado Libre Asociado de Puerto Rico (en adelante "ELA") y a la AAFAF, a cumplir con sus deberes constitucionales y ministeriales produciendo los documentos incluidos en el requerimiento de información cursado por el CPI desde febrero de 2017.

Luego de tres (3) años de pronunciada la sentencia, el CPI instó ante el foro de instancia una *Moción Informativa y en Solicitud de Remedios*. En su escrito, en síntesis, adujo que la AAFAF no cumplió con entregar "todos los documentos, informes, cartas, correos electrónicos y cualquier otra información o material intercambiado" entre contratistas gubernamentales de la JSAF y funcionarios de la AAFAF en los cuales no estuviera copiado el dominio "@promesa.gov". A tenor con lo anterior, solicitó al foro primario que aclarara que la información antes indicada formaba parte del requerimiento de información que el foro había declarado con lugar mediante *Sentencia* y, en consecuencia, que se le ordenara

al Gobernador y al ELA incluir en sus entregas toda la información y/o material intercambiado entre contratistas-asesores gubernamentales de la JSAF y los funcionarios de las agencias y/o dependencias del ELA, en los cuales no estuviera copiado algún funcionario de la JSAF.

El 4 de marzo de 2024, la AAFAF presentó *Oposición a "Moción Informativa y en Solicitud de Remedios"*. Argumentó que el requerimiento de información del CPI original no hacía referencia a las comunicaciones entre terceros contratistas-asesores de la JSAF, sino que se limitaba a las comunicaciones entre la AAFAF y la JSAF. Añadió que la solicitud del CPI constituía un requerimiento de información que no estuvo incluido en la solicitud original y que, mediante tal acción, el CPI pretendía enmendar y modificar una *Sentencia* final y firme para así evitar presentar un nuevo requerimiento al amparo de la Ley Núm. 141 de 1 de agosto de 2019.

De igual forma, en la misma fecha, el ELA presentó su escrito intitulado *Oposición a "Moción Informativa y en Solicitud de Remedios" y Cumplimiento de Orden* solicitando que no se le impusiera desacato o sanción al ELA por entender que este era improcedente.

Así las cosas, el 5 de marzo de 2024, el foro primario le concedió al CPI un término de diez (10) días para replicar. En cumplimiento con la referida orden, el 26 de abril de 2024, el CPI presentó una *Réplica a Mociones en Oposición presentadas por el Estado Libre Asociado de Puerto Rico y la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico*. En esta reiteró su postura en cuanto a que, en la medida en que los contratistas-asesores de la JSAF hacen gestiones con la AAFAF y las demás entidades gubernamentales del ELA a nombre de la JSAF y en virtud de responsabilidades que la JSAF les ha delegado, sus comunicaciones son atribuibles a dicha entidad.

Posteriormente, el 14 de mayo de 2024, la AAFAF presentó una *Dúplica a "Réplica a Mociones en Oposición presentadas por el Estado Libre Asociado de Puerto Rico y la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico"*. En síntesis, sostuvo que el CPI, pretendía que la AAFAF descubriera información que no había sido solicitada previamente y que, por ende, tampoco formaba parte de lo resuelto por el tribunal mediante *Sentencia* final y firme.

En la misma fecha, el ELA presentó su *Dúplica a "Réplica a Mociones en Oposición presentadas por el Estado Libre Asociado de Puerto Rico y la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico"*.

Trabada así la controversia, el foro primario emitió y notificó una *Orden* mediante la cual señaló para el 5 de junio de 2024 una *Vista Argumentativa* sobre las controversias y mociones post-sentencia antes discutidas. Llegado el día pautado, la vista fue celebrada mediante videoconferencia.

Así las cosas, el 7 de junio de 2024, el foro primario notificó la *Minuta-Resolución* que hoy evaluamos. Mediante la misma, el tribunal de instancia realizó un resumen de lo acontecido en la vista argumentativa y determinó que las comunicaciones generadas por terceros—entiéndase, contratistas y asesores de la JSAF—debían ser incluidas en las entregas conforme a lo dispuesto en la *Sentencia*. Lo anterior, siempre y cuando los contratistas y asesores se encontraran ejerciendo una función gubernamental en representación de la JSAF a los fines de contribuir directamente al proceso del gobierno y de dicha entidad en cumplimiento con la Ley PROMESA.

En desacuerdo con la determinación del foro recurrido, la AAFAF presentó su *Moción de Reconsideración* el 24 de junio de 2024. De igual forma, en la misma fecha, el ELA presentó *Moción de Reconsideración*.

Empero, el 1 de julio de 2024, el foro de instancia emitió *Resolución* reiterando que los documentos intercambiados entre el gobierno y los consultores o contratistas de la JSAF, en su capacidad representativa de dicho organismo y en cumplimiento con la Ley PROMESA, estaban cobijados dentro de los términos claros y específicos de la *Sentencia* y, en consecuencia, declaró No Ha Lugar a las mociones de reconsideración.

Inconforme con lo anterior, la AAFAF acude ante nos mediante una *Petición de Certiorari*, en la cual plantea el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al declarar con lugar la *Moción Informativa y en Solicitud de Remedios* del CPI, con relación a la producción de comunicaciones entre terceros contratistas de la JSAF, mediante sus dominios privados, y la AAFAF. Esto, a pesar de que el propio CPI admitió no haber solicitado textualmente estas comunicaciones en el requerimiento de información objeto del recurso de *mandamus* y eventual Sentencia.

El 3 de septiembre de 2024, el CPI presentó su *Memorando en Oposición a la Expedición del Auto del Centro de Periodismo Investigativo*. Luego, el 30 de septiembre de 2024, la AAFAF presentó *Moción Aclaratoria o Réplica a "Memorando en Oposición a la Expedición del Auto del Centro de Periodismo Investigativo"*.

Con el beneficio de la comparecencia de todas las partes, estamos en posición de resolver.

**II.**

**A.**

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 81(2023); *León v. Rest. El Tropical*, 154 DPR 249 (2001). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender

mediante el referido recurso. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994 (2021); *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478 (2019).[2]

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión ecuánime. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

---

[2] El recurso de *certiorari,* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, supra.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, tomar la determinación de si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González*, 149 DPR 859, 866 (1999).

**B.**

Como se sabe, el mandamus es un recurso altamente privilegiado y discrecional mediante el cual se exige a una persona natural o jurídica el cumplimiento de un deber ministerial dentro de las atribuciones o deberes del cargo que ocupa. Artículo 649 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421; *Kilómetro O, Inc. v. Pesquera López et al.*, 207 DPR 200, 214 (2021). Un deber es ministerial si se trata "de un mandato específico que la parte demandada tiene que cumplir y que no le permite decidir si cumple o no el acto solicitado". *AMPR v. Srio. Educación, ELA*, 178 DPR 253, 264 (2010). Debido a su naturaleza extraordinaria, el mandamus está disponible exclusivamente cuando "el peticionario carece de un recurso adecuado y eficaz en el curso ordinario de la ley". Artículo 651 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423; *Aponte Rosario et al. v. Pres. CEE II*, 205 DPR 407, 427-428 (2020).

Puede recurrirse al *mandamus* adecuadamente para obligar a los tribunales actuar cuando ellos rehúsan y deben hacerlo, pero no para indicarles o controlarles su discreción judicial; para obligar a una corte a oír y resolver cuando tiene jurisdicción, pero no para determinarle de antemano la decisión que deba emitir; para exigirles que procedan hasta dictar la sentencia, pero no para determinar y prescribir la que deba ser dictada. *In re Pagani Padró*, 181 DPR 517, 528 (2011) citando a *Pueblo v. La Costa, Jr., Juez*, 59 DPR 179, 188 (1941).

A tenor con lo anterior, la petición de *mandamus* debe justipreciarse a la luz de diversos requerimientos, entiéndase: (1) que el demandado tenga un deber u obligación ministerial impuesto por ley; (2) que el peticionario tenga un interés especial en el derecho que reclama; (3) que el deber de actuar de la agencia y el derecho del peticionario surjan de la ley de forma clara y patente; (4) que el peticionario no tiene otro remedio legal para hacer valer su derecho; y (5) que, estimado el efecto que tendrá la expedición del auto, el Tribunal entienda que los fines de la justicia obligan a su expedición. Véase, 32 LPRA secs. 3421-3423.

### C.

El acceso a la información pública ha sido reconocido en nuestro ordenamiento jurídico como un derecho constitucional de rango fundamental, el cual está estrechamente vinculado a los derechos de libertad, prensa y asociación. *Kilómetro 0 v. Pesquera López et al.*, 207 DPR 200, 207 (2021). Este derecho permite a la ciudadanía examinar el contenido de los expedientes, informes y documentos que se recopilan en la gestión de gobierno y que constan en las agencias del Estado. *Ortiz v. Dir. Adm. de los Tribunales*, 152 DPR 161, 175 (2000). Su importancia radica en la noción de que el conocimiento de las gestiones públicas facilita la libre discusión de los asuntos gubernamentales y, por ende, el

ejercicio de la libre expresión. *Kilómetro 0 v. Pesquera López et al.,* supra, citando a *Colón Cabrera v. Caribbean Petroleum,* 170 DPR 582, 590 (2007).

El derecho de acceso a la información pública se activa una vez la información solicitada por una persona es, en efecto, pública. *Engineering Services International, Inc. v. AEE*, 205 DPR 136, 147 (2020). A esos efectos, el Artículo 1(b) de la Ley Núm. 5 de 8 de diciembre de 1955, según enmendada, también conocida como Ley de Administración de Documentos Públicos de Puerto Rico, define el término *documento público* como:

> …[T]odo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en [la sec. 1002 de esta ley] se haga conservar […] permanentemente o temporalmente como prueba de las transacciones o por su valor legal. Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos.

De otra parte, el acceso a información pública, mediante el derecho a inspeccionar y sacar copias de documentos públicos, ha sido reconocido estatutariamente. Sobre este particular, el Artículo 409 del Código de Enjuiciamiento Civil establece que "[t]odo ciudadano tiene derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, salvo lo expresamente dispuesto en contrario por la ley". 32 LPRA sec. 1781.

Asimismo, en aras de cumplir con este derecho constitucional, la Asamblea Legislativa aprobó la Ley Núm. 141 de 1 de agosto de 2019, según enmendada, también conocida como *Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública.* El propósito del mencionado estatuto es:

> fomentar una cultura inequívoca de apertura sobre las gestiones del Gobierno, establecer una política pública proactiva sobre rendición de cuentas a la ciudadanía, desalentar los actos de corrupción o antiéticos, promover la participación ciudadana e instituir normas y principios claros, ágiles y económicos para el ejercicio

pleno del derecho de acceso a la información pública. Exposición de Motivos, Ley Núm. 141-2019 (3 LPRA sec. 9911 *et seq.*).

De esta forma, se estableció como política pública del Gobierno de Puerto Rico que toda información y documentación que produce el gobierno se presume pública y accesible a todas las personas por igual. 3 LPRA sec. 9913. Cabe señalar además que el propio estatuto dispone para que su interpretación sea "en la forma más liberal y beneficiosa para la persona solicitante de información pública". 3 LPRA sec. 9922.

Empero, pese a la naturaleza fundamental del derecho de acceso a la información pública, también se ha reconocido que el derecho no es absoluto. *López Vives v. Policía de PR,* 118 DPR 219, 228-229 (1987). Nuestro más Alto Foro ha expresado que este derecho puede ser limitado por el Estado si existe un interés apremiante que lo justifique. *López Vives v. Policía de PR,* supra, pág. 229. En ese sentido, para que triunfe un reclamo de confidencialidad, el Estado deberá demostrar precisa e inequívocamente la aplicabilidad de alguna de las siguientes excepciones: (1) que una ley así lo declara; (2) que la comunicación está protegida por algún privilegio evidenciario; (3) que la divulgación de la información puede lesionar derechos fundamentales de terceros; (4) que se trate de un confidente, según la Regla 515 de Evidencia de 2009, 32 LPRA Ap. VI, o (5) que sea información oficial conforme a la Regla 514 de Evidencia de 2009, 32 LPRA Ap. VI. *Kilómetro 0 v. Pesquera López et al, Inc.*, supra, a la pág. 210, citando a *Santiago v. Bobb y El Mundo, Inc.*, 117 DPR 153, 159 (1986).

### III.

La parte peticionaria aduce que el foro primario incidió al declarar con lugar la *Moción Informativa y en Solicitud de Remedios* del CPI, con relación a la producción de comunicaciones entre

terceros contratistas de la JSAF, mediante sus dominios privados, y la AAFAF. Esto, a pesar de que el CPI admitió no haber solicitado textualmente estas comunicaciones en el requerimiento de información objeto del recurso de *mandamus* y eventual *Sentencia*. Puntualiza que no fue hasta el 21 de febrero de 2024 que el CPI arguyó por primera vez que, conforme a la *Sentencia*, la AAFAF tenía la obligación de identificar los terceros que pudiesen ser contratistas de la JSAF y así producir todas las comunicaciones de dichos terceros contratistas con la AAFAF.

Por su parte, el CPI arguye que en la medida en que los contratistas-asesores de la JSAF generan comunicaciones con representantes de la AAFAF, en representación de la entidad gubernamental que los contrató, están haciendo gestiones a nombre de la JSAF. Por tanto, sostiene que el referido requerimiento no constituye una nueva solicitud de información, sino que se trata de comunicaciones comprendidas dentro de la solicitud cuya divulgación fue ordenada por el foro primario mediante sentencia.

De entrada, debemos señalar que, en virtud del derecho constitucional de acceso a la información pública, el CPI podría tener derecho a requerir las comunicaciones habidas entre la AAFAF y los contratistas-asesores de la JSAF en cumplimiento con la Ley Promesa. Sin embargo, esta conclusión, por sí sola, no dispone de la controversia de autos. Ello pues, como establecimos previamente, en su comparecencia, la parte peticionaria argumenta que la solicitud del CPI se aparta de su requerimiento inicial y que además no está en posición de identificar la información solicitada. Veamos.

En primer lugar, surge del expediente ante nuestra consideración que, el CPI en su solicitud de información inicial requirió que se le proveyera "[c]ualquier documento intercambiado … entre La Fortaleza y la Junta de Control Fiscal en cumplimiento con la Ley 'Promesa', o entre el gobierno y sus dependencias y la

Junta". Así las cosas, luego de un proceso judicial que demoró aproximadamente cuatro (4) años, el foro primario determinó que la AAFAF tenía el deber ministerial y constitucional de divulgar los documentos intercambiados con la JSAF que se relacionaran con la implantación y el cumplimiento de la Ley PROMESA.

Ahora bien, no fue hasta **tres años después de dictada la sentencia** que el CPI por primera vez solicitó expresamente a la parte peticionaria las comunicaciones directas entre terceros, contratistas independientes de la JSAF, y funcionarios de la AAFAF, sin que funcionario alguno de la JSAF fuera parte de dicha comunicación. Asimismo, requirió—luego de que la *Sentencia* adviniera final y firme—que la parte peticionaria identificara los terceros que pudiesen ser contratistas de la JSAF y de esa forma produjera todas las comunicaciones de dichos terceros con la AAFAF.

En ese sentido, debemos puntualizar que, los escritos presentados ante el foro primario son una muestra clara de que el CPI en ningún momento, previo a dictarse la sentencia, manifestó que su solicitud incluía las comunicaciones de contratistas de la JSAF. De igual forma, la resolución en reconsideración demuestra que el propio foro recurrido reconoció que ni en el requerimiento inicial del CPI ni en la sentencia se mencionaron expresamente los contratistas, consultores o representantes de la JSAF.

Por tanto, luego de un análisis sereno y ponderado de los hechos particulares del caso y de los argumentos presentados por las partes en sus respectivos escritos y a la luz del derecho aplicable, colegimos que se cometió el error señalado por la AAFAF.

Y es que, si bien entendemos que el CPI puede tener derecho a requerir las comunicaciones habidas entre la AAFAF y los contratistas-asesores de la JSAF—puesto que es evidente que, conforme a la jurisprudencia interpretativa, una comunicación o

documento enviado al gobierno y sus dependencias por un contratista o consultor, en nombre de la propia JSAF, equivale a una comunicación remitida por ese mismo organismo para fines del derecho de acceso a información pública—no podemos concluir que conforme a la solicitud de requerimiento de información inicial le correspondía a la AAFAF producir dichos documentos. Esto pues la solicitud del CPI surgió luego de que la *Sentencia* adviniera final y firme. Así las cosas, el propio CPI en su escrito reconoce que no puede proveer una lista exhaustiva de quiénes son los contratistas-asesores de la JSAF. A su vez, la parte peticionaria señala que no está en posición de identificar y divulgar la información de los contratistas-asesores de la JSAF pues no ejerce ningún grado de control sobre las comunicaciones de los terceros contratistas de la JSAF.

A esos efectos, no podemos pasar por alto que la solicitud del CPI versa sobre comunicaciones de terceros contratistas de la JSAF y no de AAFAF. Los cuales además no han sido identificados. Por lo que, resolver que le corresponde a la AAFAF, identificar quiénes son los terceros contratistas de la JSAF para que así luego pueda producir las comunicaciones pertinentes resultaría en un ejercicio inviable y desproporcionado. Ello pues implicaría que la AAFAF tenga que desplegar tiempo y recursos indeterminados para: 1) identificar los nombres de los terceros contratistas de la JSAF; 2) posteriormente, identificar las comunicaciones de los contratistas en sus bases de datos y; 3) luego, determinar si las comunicaciones fueron generadas de conformidad con las instrucciones provistas y en representación de la JSAF.

Además, recordemos que nuestro más Alto Foro ha expresado que el derecho de acceso a la información pública no es absoluto y que, a esos efectos, ha señalado ciertos escenarios mediante los cuales el Estado podrá no divulgar información luego de un reclamo

válido de confidencialidad. Por lo que, ante ese cuadro fáctico, la JSAF sería únicamente la entidad que podría identificar dichas comunicaciones y levantar—en caso de ser necesario—aquellos privilegios que entienda pertinentes.

Por tanto, entendemos que corresponde al CPI presentar una nueva solicitud de información al amparo de la Ley Núm. 141 de 1 de agosto de 2019 dirigida a la parte en posesión de la información, es decir, a la JSAF. Ello pues es la JSAF quien podrá identificar los nombres de aquellos terceros contratistas-asesores que fungen como sus representantes en asuntos relacionados con la Ley 'Promesa' y así divulgar las comunicaciones solicitadas.

**IV.**

Por los fundamentos antes esbozados, expedimos el auto de *certiorari* y *modificamos* la *Minuta-Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, a los únicos efectos de revocar la orden dirigida a la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico de identificar y entregar sus comunicaciones con contratistas independientes de la Junta de Supervisión y Administración Fiscal. En todos los demás aspectos se confirma el dictamen emitido.

Lo acordó el Tribunal y lo certifica la Secretaria.

La Jueza Rivera Marchand concurre sin opinión escrita y la Juez Barresi Ramos concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones